FILED

2016 APR -5 PM 2:46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL MIRANDO,<br><br>        Defendant. | CR No. 16- **CR16-0215**<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 982(a)(7): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH FIFTEEN

[18 U.S.C. § 1347; 18 U.S.C. § 2(b)]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

Defendant and Holter Labs, LLC

1.   From in or about January of 2005 until on or about the date of this Indictment, defendant MICHAEL MIRANDO ("MIRANDO") was a member and owner of Holter Labs, LLC ("Holter Labs"), an independent diagnostic testing facility ("IDTF"), which provided cardiac monitoring services to physicians through the use of a digital device called a holter recorder ("holter device").

1    2.    Between in or about January of 2005 and in or about October

2  of 2011, Holter Labs operated out of Orange County, California,

3  within the Central District of California.  From in or about November

4  of 2011, until on or about the date of this Indictment, Holter Labs

5  operated out of Portland, Oregon, within the District of Oregon.

6    3.    On or about January 28, 2005, defendant MIRANDO and his

7  business partner, S.C., opened a corporate bank account for Holter

8  Labs at JPMorgan Chase Bank, account number xxxxxxx6970 (the "Holter

9  Labs Chase Account").  Defendant MIRANDO maintained primary control

10  of this account.

11    4.    On or about April 13, 2010, defendant MIRANDO opened a

12  corporate bank account for Holter Labs at Bank of the West, account

13  number xxxx8734 (the "Holter Labs Bank of the West Account").

14  Defendant MIRANDO maintained primary control of this account.

15    5.    On or about December 3, 2012, defendant MIRANDO opened a

16  corporate bank account for defendant MIRANDO doing business as

17  ("dba") Holter Labs at US Bank, account number xxxxxxxx4651 (the

18  "MIRANDO/Holter Labs US Bank Account").  Defendant MIRANDO maintained

19  primary control of this account.

20    6.    On or about April 25, 2013, defendant MIRANDO opened a

21  corporate bank account for Holter Labs at US Bank, account number

22  xxxxxxxx8652 (the "Holter Labs US Bank Account").  Defendant MIRANDO

23  maintained primary control of this account.

24  The Tricare and Private Health Care Benefit Programs

25    7.    Tricare was a federally-funded comprehensive health benefit

26  program administered by the United States Department of Defense

27  designed to provide health care insurance coverage for families of

28  active uniformed services personnel, uniformed services retirees and

2

1 their families, and the families of deceased uniformed services

2 personnel.

3     8.    Aetna Life Insurance Company Aetna/Coventry Health Care (a

4 division of Aetna) ("Aetna"), Anthem Inc., also known as Anthem Blue

5 Cross or Wellpoint, Arkansas Blue Cross and Blue Shield, Blue Cross

6 Blue Shield of Alabama, Blue Cross Blue Shield of Minnesota, Blue

7 Cross & Blue Shield of Rhode Island, Blue Cross Blue Shield of South

8 Carolina, Blue Cross Blue Shield of Hawaii, Cigna, Coventry Health

9 Care, EmblemHealth, Florida Blue, doing business as Blue Cross and

10 Blue Shield of Florida, GEHA, Highmark Blue Shield, Humana, IHC

11 Health Solutions, Independence Blue Cross, Independent Health Corp.,

12 Kaiser Permanente, UnitedHealthcare ("United"), WellCare Health

13 Plans, Inc., and XL Health (collectively, the "Private Health Care

14 Benefit Programs"), were private health insurance providers that

15 operated private plans, affecting commerce, under which medical

16 benefits, items, and services were provided to individuals in

17 exchange for payment.

18     9.    Providers, such as physicians, medical clinics, and IDTFs

19 like Holter Labs, would submit claims to Tricare and the Private

20 Health Care Benefit Programs (collectively, the "HCBPs") for patients

21 (also known as "beneficiaries") covered by the HCBPs, based on

22 services rendered to the beneficiaries.

23     10.   HCBP beneficiaries were issued beneficiary identification

24 cards that identified the beneficiary by a unique beneficiary

25 identification number ("Unique Beneficiary Number"). Providers used

26 Unique Beneficiary Numbers to bill for medical services rendered to

27 their respective beneficiaries.

28 //

The Medical Claims Process

11. The HCBPs reimbursed providers only for services that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician, and were provided in accordance with each of the HCBP's regulations and guidelines that governed whether a particular service would be reimbursed by the HCBP.

12. The HCBPs required providers of medical services, including IDTFs like Holter Labs, to submit claim forms in order to receive reimbursement for medical services that the IDTFs had provided to each HCBP's subscriber. Among other information, providers were required to state on the claim forms: (a) the beneficiary's name and Unique Beneficiary Number; (b) the type of service provided (identified by a standardized procedure code number (a "CPT code")); (c) the date the service was provided; (d) the charge for the service; and (e) the provider's name and/or the provider's identification number.

13. Providers, such as physicians, medical clinics, and IDTFs like Holter Labs, could submit claim forms to HCBPs electronically or by mail.

B.   THE SCHEME TO DEFRAUD

14. Beginning on or about January 4, 2005, and continuing through on or about the date of this Indictment, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant MIRANDO, together with others known and unknown to the Grand Jury, knowingly, willfully, and within intent to defraud, executed a scheme and artifice: (a) to defraud a health care benefit program, namely the HCBPs, as to material matters in

1  connection with the delivery of and payment for health care benefits,

2  items, and services; and (b) to obtain money from the HCBPs by means

3  of material false and fraudulent pretenses and representations and

4  the concealment of material facts in connection with the delivery of

5  and payment for health care benefits, items, and services.

6  C.   The Fraudulent Scheme

7      15.   The fraudulent scheme operated, in substance, in the

8  following manner:

9          a.   Defendant MIRANDO would obtain or cause to be obtained

10 holter devices from Lynn Medical Company, a supplier of holter

11 devices.

12         b.   Defendant MIRANDO would send or caused to be sent mass

13 mailings to physicians in various locations throughout the United

14 States, advertising services related to Holter Labs' holter devices.

15         c.   When a physician called Holter Labs expressing

16 interest in a holter device, defendant MIRANDO would send or cause to

17 be sent a holter device to that physician free of charge.

18         d.   Defendant MIRANDO's business partner, S.C., would

19 download data, which had been uploaded to the Holter Labs website by

20 a physician who used a holter device; create a medical report using

21 that data; and provide that medical report, as well as the

22 physician's holter device order form, which contained the

23 beneficiary's name and insurance information, to defendant MIRANDO.

24         e.   Defendant MIRANDO would submit, and cause the

25 submission of, false and fraudulent claims to the HCBPs for medical

26 services that defendant MIRANDO knew the holter devices could not and

27 did not perform, including the medical services associated with CPT

28 codes 93025 (microvolt T-wave alternans for assessment of ventricular

1   arrhythmias), 93229 (remote 30 day electrocardiogram with tech

2   support), 93271 (patient activated external electrocardiogram

3   recording with remote download capability up to 30 days), 95806

4   (sleep study with simultaneous recording of heart rate, oxygen

5   saturation, respiratory airflow, and respiratory effort), and 95827

6   (night electroencephalogram).

7       f.   Defendant MIRANDO would submit, and cause the

8   submission of, false and fraudulent claims to the HCBPs for medical

9   services that defendant MIRANDO knew the holter devices could

10  perform, but did not perform, including the medical services

11  associated with CPT codes 93226 (external electrocardiogram recording

12  up to 48 hours) and 93799 (unlisted cardiovascular service or

13  procedure).

14      g.   As a result of the submission of false and fraudulent

15  claims by defendant MIRANDO, the HCBPs would make payments to the

16  Holter Labs Chase Account, the Holter Labs Bank of the West Account,

17  the MIRANDO/Holter Labs US Bank Account, and the Holter Labs US Bank

18  Account (the "Holter Labs Bank Accounts"), all of which defendant

19  MIRANDO controlled.

20      h.   Defendant MIRANDO would transfer and disburse monies

21  from the Holter Labs Bank Accounts to himself and others.

22  16.   As a result of this scheme, defendant MIRANDO submitted or

23  caused to be submitted to the HCBPs approximately $6,000,666.25 in

24  false or fraudulent claims, resulting in payment of approximately

25  $2,331,274.81 by these HCBPs.

26  D.   EXECUTIONS OF THE FRAUDULENT SCHEME

27  17.   On or about approximately the dates set forth below, in

28  Orange County, within the Central District of California, and

6

1  elsewhere, defendant MIRANDO, together with others known and unknown

2  to the Grand Jury, for the purpose of executing the fraudulent scheme

3  described above, knowingly and willfully caused to be submitted to

4  the HCBPs listed below the following false and fraudulent claims

5  regarding services purportedly provided to beneficiaries residing in

6  Orange and Los Angeles Counties, within the Central District of

7  California:

| COUNT | BENEFICIARY /HCBP | CLAIM NUMBER | CPT CODES | DATE OF SERVICE | DATE OF SUBMISS- ION | AMOUNT FALSELY CLAIMED |
|---|---|---|---|---|---|---|
| ONE | J.H./United | 283578669201 | 95827 | 4/11/11 | 4/18/11 | $325 |
| TWO | J.H./United | 285937578601 | 93271 | 4/12/11 | 5/16/11 | $695 |
| THREE | J.H./United | 288563029501 | 93226 95827 | 4/15/11 | 6/13/11 | $695 |
| FOUR | J.H./United | 291903650901 | 93025 93226 95827 | 4/18/11 | 7/18/11 | $950 |
| FIVE | J.H./United | 291903650801 | 93025 93226 95827 | 4/21/11 | 7/18/11 | $950 |
| SIX | S.F./Cigna | 7221125394123 | 95827 | 8/10/11 | 9/1/11 | $325 |
| SEVEN | S.F./Cigna | 7221132999597 | 93271 | 8/11/11 | 11/22/11 | $695 |
| EIGHT | S.F./Cigna | 7221132900221 | 93226 95827 | 8/18/11 | 11/22/11 | $595 |
| NINE | S.F./Cigna | 7221135194989 | 93025 93226 95827 | 8/24/11 | 12/15/11 | $845 |
| TEN | M.B./United | 395307288601 | 95827 | 12/3/12 | 12/10/12 | $325 |
| ELEVEN | M.B./United | 399402695101 | 93025 93271 | 12/4/12 | 1/11/13 | $990 |
| TWELVE | M.B./United | 398955221801 | 93025 93226 95827 | 12/6/12 | 1/11/13 | $845 |

27  //

28  //

7

| COUNT | BENEFICIARY /HCBP | CLAIM NUMBER | CPT CODES | DATE OF SERVICE | DATE OF SUBMISS-ION | AMOUNT FALSELY CLAIMED |
|---|---|---|---|---|---|---|
| THIRTEEN | M.B./United | 402261643201 | 93226 95806 95827 | 12/10/12 | 2/6/13 | $895 |
| FOURTEEN | L.S./Aetna | EVJK63CDN00 | 95827 | 5/29/13 | 6/6/13 | $325 |
| FIFTEEN | L.S./Aetna | EMTV76CF700 | 93025 93271 | 5/30/13 | 7/9/13 | $790 |

FORFEITURE ALLEGATION

[18 U.S.C. § 982(a)(7)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant MICHAEL MIRANDO that the United States of America will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(7), in the event of defendant MIRANDO's conviction under any of Counts One through Fifteen of this Indictment.

2.    In the event defendant MIRANDO is convicted under any of Counts One through Fifteen of this Indictment, Defendant MIRANDO shall forfeit to the United States of America the following property:

        a.    All right, title and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds of the commission of any offense set forth in any of Counts One through Fifteen of this Indictment. The property to be forfeited includes but is not limited to a money judgment of at least $2,331,274.81.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant MIRANDO shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant MIRANDO, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

1   substantially diminished in value; or (e) has been commingled with

2   other property that cannot be divided without difficulty.

3                                                   A TRUE BILL

4

5                                      /S/

6                                     Foreperson

7   EILEEN M. DECKER
    United States Attorney

8

    LAWRENCE S. MIDDLETON

9   Assistant United States Attorney
    Chief, Criminal Division

10

11

12   CAROL A. CHEN
    Assistant United States Attorney

13   Acting Chief, General Crimes
    Section

14

    CAMERON L. SCHROEDER

15   Assistant United States Attorney
    Deputy Chief, General Crimes

16   Section

17   CHRISTOPHER C. KENDALL
    Assistant United States Attorney

18   General Crimes Section

19

20

21

22

23

24

25

26

27

28