SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MICHAEL G. FREEDMAN (Cal. Bar No. 281279)
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorneys
General Crimes
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0631/3659
        Facsimile: (213) 894-6269
        E-mail:    michael.freedman@usdoj.gov
                   katherine.rykken@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>MICHAEL MIRANDO,<br><br>          Defendant. | No. CR 16-215-PA<br><br>TRIAL MEMORANDUM<br><br>Trial Date:   April 25, 2017<br>Trial Time:   8:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Percy Anderson |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Michael G. Freedman and Katherine A. Rykken, hereby submits its trial memorandum in the above-captioned case.

     The government reserves the right to submit supplemental trial memoranda as appropriate before, or during, the trial.

Dated: April 21, 2017

Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

_____*/s/Michael G. Freedman*_____
MICHAEL G. FREEDMAN
KATHERINE A. RYKKEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**Table of Contents**

TABLE OF AUTHORITIES..............................................iii

TRIAL MEMORANDUM....................................................1

I.    STATUS OF THE CASE............................................1

      A.    Trial Schedule.........................................1

      B.    Length of Trial........................................1

      C.    Pre-Trial Status of Defendant..........................1

      D.    Jury Trial.............................................1

      E.    Witnesses..............................................1

II.   STATEMENT OF THE CHARGE AGAINST DEFENDANT.....................2

III.  STATEMENT OF FACTS...........................................2

IV.   ELEMENTS OF THE OFFENSE AND PERTINENT LAW.....................5

      A.    Elements...............................................6

            1.    Health Care Fraud................................6

            2.    Causing an Act to be Done........................6

      B.    HCBPs..................................................7

      C.    Knowledge..............................................7

      D.    Willfully..............................................7

      E.    Scheme to Defraud......................................8

      F.    Fraudulent Intent......................................8

      G.    No Anticipated Defense Case............................9

V.    LEGAL AND EVIDENTIARY ISSUES.................................9

      A.    Trial Exhibit Stipulations.............................9

      B.    Patient Files and Medical Records......................9

      C.    Victim Agency Testimony by HCBPs......................10

      D.    Charts and Summaries..................................10

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                    PAGE

    E.    Business Records........................................12

          1.    Foundational Requirements...........................13

          2.    "Qualified Witness".................................13

          3.    Circumstances of Preparation........................14

          4.    Authentication by Declaration.......................15

          5.    Certified Public Records............................15

    F.    Pecuniary Gain.........................................16

    G.    Cross Examination......................................16

    H.    Defense Witnesses......................................17

VI.  RECIPROCAL DISCOVERY........................................18

VII. CONCLUSION..................................................19

ii

**TABLE OF AUTHORITIES**

DESCRIPTION                                                        PAGE

**CASES**

Barsky v. United States,
    339 F.2d 180(9th Cir. 1964)....................................11

Bourjaily v. United States,
    483 U.S. 171 (1987)...........................................13

Bryan v. United States,
    524 U.S. 184 (1998)............................................8

Carpenter v. United States,
    484 U.S. 19(1987)..............................................8

Crawford v. Washington,
    541 U.S. 36 (2004)............................................15

Irwin v. United States,
    338 F.2d 770(9th Cir. 1964)....................................8

La Porta v. United States,
    300 F.2d 878(9th Cir. 1962)...................................13

Phillips v. United States,
    356 F.2d 297(9th Cir. 1965)...................................10

Tamarin v. Adam Caterers, Inc.,
    13 F.3d 51(2d Cir. 1993)......................................12

United States v. Aceves-Rosales,
    832 F.2d 1155(9th Cir.1987)...................................18

United States v. Amrep Corp. (Amrep I),
    545 F.2d 797(2d Cir. 1976).....................................8

United States v. Awad,
    551 F.3d 930(9th Cir. 2009)....................................8

United States v. Basey,
    613 F.2d 198(9th Cir. 1979)...................................14

United States v. Bland,
    961 F.2d 123(9th Cir. 1992)...................................13

United States v. Booth,
    309 F.3d 566(9th Cir. 2002)...................................16

United States v. Bush,
    522 F.2d 641(7th Cir. 1975)...................................10

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                <u>PAGE</u>

<u>United States v. Caswell</u>,
        825 F.2d 1228(8th Cir. 1987)................................12

<u>United States v. Catabran</u>,
        836 F.2d 453(9th Cir. 1988)................................15

<u>United States v. Childs</u>,
        5 F.3d 1328(9th Cir. 1993)................................13

<u>United States v. Cuozzo</u>,
        962 F.2d 945(9th Cir. 1992)................................17

<u>United States v. Franco</u>,
        874 F.2d 1136(7th Cir. 1989)................................14

<u>United States v. Gardner</u>,
        611 F.2d 770(9th Cir. 1980)................................12

<u>United States v. Gay</u>,
        967 F.2d 322(9th Cir. 1992)................................17

<u>United States v. Green</u>,
        745 F.2d 1205(9th Cir. 1984)................................8

<u>United States v. Hagege</u>,
        437 F.3d 943(9th Cir. 2006)................................15

<u>United States v. Hathaway</u>,
        798 F.2d 902(6th Cir. 1986)................................14

<u>United States v. Hearst</u>,
        563 F.2d 1331(9th Cir. 1977)................................17

<u>United States v. Huber</u>,
        772 F.2d 585(9th Cir. 1985)................................14

<u>United States v. Johnson</u>,
        594 F.2d 1253(9th Cir. 1979)................................11

<u>United States v. Jones</u>
        (Jones II),
        425 F.2d1048,(9th Cir. 1970)................................8

<u>United States v. Laurins</u>,
        857 F.2d 529(9th Cir. 1988)................................6

<u>United States v. Meyers</u>,
        847 F.2d 1408(9th Cir.1988)................................11

<u>United States v. Miller</u>,
        771 F.2d 1219(9th Cir.1985)................................15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Miranda-Uriarte,
        649 F.2d 1345(9th Cir.1981)...................................16

United States v. Moore,
        208 F.3d 577(7th Cir. 2000)...................................19

United States v. Oren,
        893 F.2d 1057(9th Cir. 1990)...................................8

United States v. Radseck,
        718 F.2d 233(7th Cir. 1983)...................................11

United States v. Ranney,
        719 F.2d 1183(1st Cir. 1983)...................................10

United States v. Ray,
        930 F.2d 1368(9th Cir. 1990)...................................13

United States v. Saniti,
        604 F.2d 603(9th Cir. 1979)...................................16

United States v. Scholl,
        166 F.3d 964(9th Cir. 1999)...................................18

United States v. Silverman,
        449 F.2d 1341(2d Cir. 1971)...................................11

United States v. Utz,
        886 F.2d 1148(9th Cir.1989)...................................8

**STATUTES**

18 U.S.C. § 1347.........................................2, 6, 7

18 U.S.C. § 2.........................................2, 6, 7

**RULES**

Fed. R. Evid. 104.........................................13

Fed. R. Evid. 404.........................................17

Fed. R. Evid. 611.........................................12, 13, 16

Fed. R. Evid. 803.........................................10, 13, 16

Fed. R. Evid. 902.........................................15, 16

Fed. R. Evid. 1006.........................................11

Fed. R. Evid. 1101.........................................13

v

**<u>TRIAL MEMORANDUM</u>**

**I.     STATUS OF THE CASE**

    **A.     Trial Schedule**

    Jury trial against defendant Mirando ("Mirando" or "defendant") is set for April 25, 2017, at 8:30 a.m.

    **B.     Length of Trial**

    The estimated time for the presentation of the government's case-in-chief is approximately three to five days.

    **C.     Pre-Trial Status of Defendant**

    Defendant is on bond pending trial.

    **D.     Jury Trial**

    Jury trial has not been waived.

    **E.     Witnesses**

    At this time, the government expects to call approximately 14[1] witnesses in its case-in-chief.  The witnesses are listed below in the approximate[2] order the government expects to call the witnesses:

    1.     Jon Barron – CEO and President of Datrix Labs

---

    [1] As noted at the April 17, 2017 status conference, the parties are attempting to reach an agreement regarding a stipulation as to the admissibility of summary charts based upon insurance claims records previously produced to defendant.  Defendant, however, has raised a question as to the authenticity of these insurance claims records, and in the event the parties do not enter into a stipulation, the government may need to call up to an additional 35 witnesses to authenticate these insurance claims records.

    [2] As the government also noted at the April 17, 2017 status conference, it is attempting to more precisely estimate the time needed for each witness' testimony and thus now estimates that its case-in-chief will take three to five days, assuming the stipulation discussed above, rather than four to six days.  With respect to the order of witnesses, the government is still coordinating scheduling with witnesses and expects that the order in which the government calls witnesses may still be adjusted further.  Finally, the government has not yet determined whether the testimony of all currently anticipated witnesses will prove necessary and therefore may decide during trial not to call certain witnesses, specifically Stanton Crowley.

2.    Martha Bennett – Patient/beneficiary

3.    Ronald Richmond – Bennett's doctor

4.    John Hattrup – Patient/beneficiary

5.    Gregory Joy – Hattrup's doctor

6.    Suzanne Darsow – Representative of United Health Care,
      Bennett and Hattrup's insurer

7.    Lisa Solmor – Patient/beneficiary

8.    Ruby Simpkins – Solmor's doctor

9.    Robin Consiglio – Representative of Aetna, Solmor's insurer

10.   Stacey Foster Sixtos – Patient/beneficiary

11.   Jeffrey Globus – Foster Sixtos' doctor

12.   Emily Russell  – Representative of Cigna, Foster's insurer

13.   Stanton Crowley (if needed) – Former co-owner, Holter Labs

14.   Kathleen Kennedy – FBI Special Agent

The government will update this list, as necessary, in advance of trial.  The government may call additional witnesses in rebuttal, depending on whether defendant calls any witnesses and on what testimony they give.

## II.   STATEMENT OF THE CHARGE AGAINST DEFENDANT

The defendant is charged in the indictment with fifteen counts of violating 18 U.S.C. § 1347 (health care fraud) and 18 U.S.C. § 2(b) (causing an act to be done).

## III. STATEMENT OF FACTS

The government expects that the evidence at trial will establish the following facts: From approximately January 2005 to April 2016, defendant engaged in a scheme to defraud health insurance companies (legally defined as health care benefit programs or "HCBPs").

1   Defendant was a member and owner of Holter Labs, LLC ("Holter Labs"),

2   which he formed in 2005 with Stanton Crowley ("Crowley").

3       Holter Labs provided cardiac monitoring services to doctors.

4   Holter Labs provided a digital recorder, called a holter recorder, to

5   doctors for use on their patients.  The recorder is a portable device

6   that monitors cardiovascular activity for 24 or 48 hours.   The

7   device records electrical signals from the heart via a series of

8   electrodes attached to the chest.  The most common use of a holter

9   recorder is to monitor heart activity for electrocardiography

10  ("ECG").  Jon Barron, the manufacturer of the holter devices used by

11  Holter Labs, will testify to these details.

12      When doctors prescribed a holter recorder to their patients, the

13  doctors filled out an order form provided by Holter Labs, indicating

14  whether they were prescribing a 24-hour or 48-hour use of the device.

15  After the patient returned the device to the doctor's office, the

16  doctor's office sent the data from the device to Holter Labs.

17  Crowley, as Holter Lab's technician, used a software program to

18  create a medical report using the data retrieved from the device.  He

19  then completed a quality control review of the report and uploaded it

20  to Holter Labs' website for the physician to access.  Crowley then

21  sent to defendant, often via e-mail, the information for that

22  patient, including the patient's name, and insurance information.

23  Typically, Crowley included in the e-mail a copy of the order form

24  and the first page of the medical report.  Defendant's

25  responsibilities were to handle all of the other business activities

26  for Holter Labs, including purchasing the recorders, advertising,

27  managing the company's finances, and submitting the medical claims to

28  the patients' insurance companies.  These facts will be established

at trial through examples of the documents referenced and, if necessary, through Crowley's testimony.

Defendant billed the patient's insurance companies using the Current Procedural Terminology ("CPT") set, which is a medical code set maintained by the American Medical Association. The CPT code set describes medical, surgical, and diagnostic services and is designed to communicate uniform information about medical services and procedures among providers, beneficiaries, and HCBPs. CPT codes define the services rendered. The CPT codes are used by health care benefit programs in medical billings.

Defendant appropriately billed for a number of services rendered with legitimate CPT codes, including the medical services associated with the following CPT codes: 93226 (external electrocardiogram recording up to 48 hours); and 93799 (unlisted cardiovascular service or procedure). But defendant often billed for these same services on multiple dates of service, when, as the patients and doctors will testify, the service associated with that CPT code was only performed on a single date.

Defendant also billed for services that the holter devices never performed and, in many cases, were incapable of performing. The five fraudulent CPT codes were: 93025 (microvolt T-wave alternans for assessment of ventricular arrhythmias); 93229 (remote 30 day electrocardiogram with tech support); 93271 (patient activated external electrocardiogram recording with remote download capability up to 30 days); 95806 (sleep study with simultaneous recording of heart rate, oxygen saturation, respiratory airflow, and respiratory effort); and 95827 (night electroencephalogram for measuring brain waves). The patients will testify that they never used these

4

services.  The doctors will testify that they never prescribed these services.  The doctors' records and the order forms submitted to Holter Labs will confirm that the doctors only prescribed 24-hour use of the device on a single occasion for each patient.

Over the course of the scheme, defendant submitted claims to insurance companies for approximately $7.3 million and was paid approximately $2.6 million on these claims by the insurance companies.  The fraudulent billings represent approximately 82% of the total billings, or approximately $6 million in fraudulent claims and approximately $2.3 million in payments.  The insurance company representatives will explain the insurance claims process and testify that they paid Holter Labs for claims that defendant submitted, which included the CPT codes for services never performed.  The claims records will demonstrate defendant's use of the fraudulent CPT codes, including his description of the services purportedly performed on certain dates, and, in certain cases, banking records will show payment by the insurance companies to Holter Labs for these claims.

Holter Labs deposited the majority of the money received from insurance companies into its primary business bank account at Chase Bank, but defendant transferred large amounts of money from this account into a company he created called Murrieta Medical Supply. From Murrieta Medical Supply, defendant transferred significant sums of money into personal accounts of his own, and then used that money to invest in real estate around the country and internationally.  The summary charts of these bank records will show these transfers.

## IV.  ELEMENTS OF THE OFFENSE AND PERTINENT LAW

Defendant is charged with 15 counts of health care fraud.

### A.   Elements

#### 1.   Health Care Fraud

Counts one through fifteen charge defendant with health care fraud, in violation of 18 U.S.C. § 1347, which has the following elements: (1) defendant knowingly and willfully participated in or devised a scheme or plan to defraud a health care benefit program, or a scheme or plan for obtaining money or property from a health care benefit program, by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property of a health care benefit program; (3) the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and (4) the scheme involved the delivery of or payment for health care benefits, items, or services. See Ninth Circuit Model Criminal Jury Instruction No. 8.121 (2010) (modified for health care fraud).

#### 2.   Causing an Act to be Done

Title 18, United States Code, Section 2(b) provides: whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Under 18 U.S.C. § 2(b), a person who willfully causes another person to commit a criminal act is guilty as a principal regardless of whether the person actually committing the criminal act intended to commit, or knew that he or she was committing, a criminal act. United States v. Laurins, 857 F.2d 529, 535 (9th Cir. 1988).  To prove defendant guilty under this theory, the government must prove

the following elements: (1) health care fraud was committed by someone and (2) defendant willfully ordered, directed, or otherwise brought about the commission of health care fraud.  18 U.S.C. § 2(b) (modified to specify defendant charged with health care fraud); see also Laurins, 857 F.2d at 535 (intent of person actually performing proscribed act is immaterial under 18 U.S.C. § 2(b); what matters is defendant's intent).

### B.   HCBPs

The term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.  18 U.S.C. § 24.

### C.   Knowledge

A defendant acts knowingly if the defendant is aware of the act and does not act or does not fail to act through ignorance, mistake, or accident.  See Ninth Circuit Model Criminal Jury Instruction No. 5.6 (2010 ed.).  In deciding whether a person acted knowingly, the jury may consider evidence of his words, acts, or omissions, along with all the other evidence.  Id.

### D.   Willfully

A defendant acts willfully if he committed the act voluntarily and purposely, and with knowledge that his conduct was, in a general sense, unlawful.  See 18 U.S.C. § 1347(b); 42 U.S.C. § 1320a-7b(b)(h); Ninth Circuit Model Criminal Jury Instruction No. 5.5 (2010 ed.); Bryan v. United States, 524 U.S. 184, 189-91, 193-96, 198-99 (1998); United States v. Awad, 551 F.3d 930, 937-41 (9th Cir. 2009).

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.    Scheme to Defraud**

A scheme to defraud includes any plan or course of conduct "reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Green, 745 F.2d 1205, 1207 (9th Cir. 1984); Irwin v. United States, 338 F.2d 770, 773 (9th Cir. 1964) (same).  The government is not required to prove that defendant's scheme was successful, or that he actually caused any victim (i.e., Medicare) to lose money or property.  See United States v. Utz, 886 F.2d 1148, 1151 (9th Cir. 1989).

**F.    Fraudulent Intent**

Acting with "intent to defraud" means an intent to obtain money or property from someone by deceiving or cheating them.  Ninth Circuit Model Criminal Jury Instructions, No. 3.16 (2010 ed.); see Carpenter v. United States, 484 U.S. 19, 27 (1987).  In other words, it is knowingly acting with the intention or purpose to deceive or cheat.  Carpenter, 484 U.S. at 27.

Fraudulent intent may be, and often must be, shown by circumstantial evidence.  See United States v. Jones (Jones II), 425 F.2d 1048, 1058 (9th Cir. 1970).  Because of the difficulty in proving intent, any proof properly connected to a defendant that establishes the manner in which the fraudulent scheme was carried into execution is admissible.  United States v. Amrep Corp. (Amrep I), 545 F.2d 797, 800 (2d Cir. 1976).

A defendant need not intend to cause an actual loss to be guilty of fraud.  Carpenter v. United States, 484 U.S. 19, 26-27 (1987); United States v. Oren, 893 F.2d 1057, 1061-1062 (9th Cir. 1990).

### G.   No Anticipated Defense Case

During the April 10 and 17 status conferences with the Court, the government was informed that defendant does not anticipate presenting any witnesses in its case-in-chief at this time.

## V.   LEGAL AND EVIDENTIARY ISSUES

At trial, the government intends to introduce into evidence, among other things, documents, summary charts, and testimony from percipient witnesses (i.e., Barron, the device manufacturer; patients/beneficiaries; doctors; and Crowley, if necessary); insurance company representatives; and Special Agent Kennedy, the case agent, who will testify regarding the summary charts and other records obtained during the investigation.

### A.   Trial Exhibit Stipulations

The parties are attempting to reach stipulations concerning the admissibility of certain categories of exhibits: (1) summary charts of Holter Labs' and defendant's bank records, which defendant has stated he will stipulate to; (2) summary charts of claims data from insurance companies, which defendant has stated he will stipulate to once authenticity is established; and (3) various bank, legal, public, and business records obtained during the investigation.

### B.   Patient Files and Medical Records

The government intends to introduce into evidence patient files and medical records (with redactions to preserve patient privacy) that were obtained pursuant to subpoenas and administrative requests. None of the documents in these patient files contain hearsay statements because they are statements of medical diagnosis or treatment and describe medical histories, see Fed. R. Evid. 803(4) (statements for medical diagnosis or treatment not hearsay).

### C.    Victim Agency Testimony by HCBPs

The government intends to call three witnesses who work for the insurance company victims.  The government anticipates that these witnesses will testify about, among other things, how insurance companies operate and how they would not have authorized payments for fraudulent claims submitted by defendant had they known the truth. This kind of testimony is proper in fraud scheme prosecutions because it goes to the victim's state of mind, and demonstrates whether the scheme was capable of misleading the victim.  See Phillips v. United States, 356 F.2d 297, 307-09 (9th Cir. 1965).

Moreover, as representatives of the victim of the fraud, these witnesses may answer hypothetical "what if" or "if you had known" questions regarding whether the insurance companies would have paid for the services at issue in this case if they had known of certain facts.  Such testimony tends to prove the existence of the scheme to defraud, the effect that the concealed facts would have had on the insurance companies had they known them, the materiality of the concealed facts, and the deceptive nature of the representations or omissions.  See United States v. Ranney, 719 F.2d 1183, 1187-89 (1st Cir. 1983); United States v. Bush, 522 F.2d 641, 649-51 (7th Cir. 1975).  While the government is not required to prove that the insurance companies were actually defrauded, it may use as proof testimony that the scheme did, in fact, deceive the insurance companies.  See Phillips, 356 F.2d at 308.

### D.    Charts and Summaries

Certain portions of the case involve a large number of documents and voluminous records, in particular, records of insurance claims defendant submitted and bank records of Holter Labs' and defendant's.

The underlying records have been produced to defendant in discovery. To assist in the jury's understanding of the case, the government intends to present and introduce as exhibits charts and summaries of those materials, to save time at trial and to avoid the need to present the voluminous records themselves.

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by the parties at a reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006; see also United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979). While the underlying documents must be admissible, they need not be admitted. See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6. Summary charts need not contain the defendant's version of the evidence and may be given to the jury while a government witness testifies concerning them. See United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th Cir. 1964).

Summary exhibits, such as those the government wishes to introduce into evidence, are admissible under Fed. R. Evid. 611(a) and have long been recognized as an appropriate means of clarifying a complicated or document-intensive case for the jury. See United States v. Silverman, 449 F.2d 1341, 1346 (2d Cir. 1971). Fed. R. Evid. 611(a) permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time,

1    and (3) protect witnesses from harassment or undue embarrassment."

2    See United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

3         Hence, under Federal Rules of Evidence 1006 and 611(a), courts

4    routinely admit into evidence summary charts that organize other

5    evidence and aid the jury's understanding, as long as the underlying

6    evidence is admissible, has been made available to the adverse party,

7    and a witness with knowledge of the preparation of the chart or

8    summary is available for cross-examination.  See Gardner, 611 F.2d at

9    776; Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993);

10   United States v. Caswell, 825 F.2d 1228, 1235-36 (8th Cir. 1987).

11        The summary exhibits the government intends to present satisfy

12   all of the foregoing requirements.  The pertinent evidence, involving

13   claims data, bank account transactions, and related evidence, is

14   admissible and has been produced to the defendant in discovery.  The

15   government has advised defense counsel of its intention to use

16   summary charts and has made drafts of such charts available to

17   counsel.  The government will provide final versions to counsel prior

18   to introducing them at trial.  The summary witness, Special Agent

19   Kennedy, will be available for cross-examination.  Moreover, the

20   summary exhibits will serve to organize and clarify the government's

21   presentation and assist the jury's understanding of the case.  The

22   use and admission of summary exhibits at trial is thus appropriate.

23   Fed. R. Evid. 611(a); Gardner, 611 F.2d at 776.

24        **E.    Business Records**

25        In addition to the business records underlying the summary

26   charts, the government also expects to seek to admit certain business

27   records themselves, including doctors' records; insurance company

28   claims records and data; and certain bank records.

1                     1.    Foundational Requirements

2          The parties expect to stipulate to foundation, authenticity, and

3    admission of certain business records (i.e., records of regularly

4    kept activities), such as bank statements reflecting defendant's and

5    others' financial transactions as well as insurance claims data.  If

6    the parties do not agree to a stipulation, the following facts must

7    be established through the custodian of the records or another

8    qualified witness: (1) the records must have been made at or near the

9    time by, or from information transmitted by, a person with knowledge;

10   and (2) the records must have been made and kept in the course of a

11   regularly conducted business activity. Fed. R. Evid. 803(6); United

12   States v. Bland, 961 F.2d 123, 126-28 (9th Cir. 1992).  In

13   determining whether these foundational facts are established, the

14   court may consider hearsay and other evidence not admissible at

15   trial.  See Federal Rules of Evidence 104(a) & 1101(d)(1); Bourjaily

16   v. United States,  483 U.S. 171, 178-79 (1987).

17         Challenges to the accuracy or completeness of business records

18   ordinarily go to the weight of the evidence and not its

19   admissibility.  See, e.g., La Porta v. United States, 300 F.2d 878,

20   880 (9th Cir. 1962).

21                     2.   "Qualified Witness"

22         Even without a stipulation by the parties of certain business

23   records, the phrase "other qualified witness" is broadly interpreted

24   to require only that the witness understand the recordkeeping system.

25   United States v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993); United

26   States v. Ray, 930 F.2d 1368, 1370-71 (9th Cir. 1990) (welfare fraud

27   investigator may testify about contents of defendant's welfare file

28   where investigator was familiar with filing and reporting

                                    13

requirements and forms used, even though she did not record information and was not custodian); United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("The witness 'need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted.'").

A qualified witness need not be employed by, or related to, the entity to whom the records belong; a federal agent or an independent witness may be a qualified witness for records seized from a company. United States v. Hathaway, 798 F.2d 902, 905-07 (6th Cir. 1986) (FBI agent could provide foundation testimony for admission of company records under Rule 803(6) as "there is no reason why a proper foundation for application of Rule 803(6) cannot be laid, in part or in whole, by the testimony of a government agent or other person outside the organization whose records are sought to be admitted. . . . [A]ll that is required is that the witness be familiar with the record keeping system.").

### 3.   Circumstances of Preparation

Even without a stipulation by the parties as to certain business records, the government need not establish precisely when or by whom the document was prepared; all the rule requires is that the document be made "at or near the time" of the act or event it purports to record. See United States v. Huber, 772 F.2d 585, 591 (9th Cir. 1985); United States v. Basey, 613 F.2d 198, 201 n.1 (9th Cir. 1979). "There is no requirement that the government establish when and by whom the documents were prepared." See Ray, 930 F.2d at 1370; Huber, 772 F.2d at 591 ("[T]here is no requirement that the government show precisely when the [record] was compiled").

14

Rule 803(6) does not require that the business rely on the document in a specific way; the rule merely requires that the record be "kept in the course of regularly conducted business activity." See United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988) (citing United States v. Miller, 771 F.2d 1219, 1237 (9th Cir. 1985); United States v. Smith, 609 F.2d 1294, 1301 (9th Cir. 1979)).

### 4.   Authentication by Declaration

Likewise, certified domestic records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity.  Fed. R. Evid. 902(11).  Custodian of records declarations may be utilized by the court to provide a foundation for the admission in evidence of business records without creating any confrontation issue under Crawford v. Washington, 541 U.S. 36 (2004).  See United States v. Hagege, 437 F.3d 943, 957 (9th Cir. 2006).

### 5.   Certified Public Records

The parties also hope to agree to a stipulation to the foundation, authenticity, and admission of public records, such as court filings and corporate filings.  Even without a stipulation, certain public records in the form of domestic public documents under seal, or certified copies of public records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility are admissible.  Fed. R. Evid. 902(1) and 902(4).  Such records are self-authenticating, Fed. R. Evid. 902(4), and not hearsay, Fed. R. Evid. 803(8).

### F.   Pecuniary Gain

The government intends to show that defendant made money during the course of the fraudulent scheme, which is admissible to show his participation in the fraud.  See United States v. Saniti, 604 F.2d 603, 604 (9th Cir. 1979).  The receipt and use of money derived from the scheme is also circumstantial evidence of fraud.  See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002).

### G.   Cross Examination

The scope of a cross-examination is within the discretion of the trial court.  Fed R. Evid. 611(b).  It should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The trial court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.  Fed. R. Evid. 611(b).

On April 10 and April 17, 2017, defense counsel represented to the court that the defendant in this case did not plan to testify on his own behalf.  Importantly, if the defendant reverses his decision, a defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence.  Id.  Moreover, a defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.  United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985).

The scope of defendant's waiver is coextensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945,

16

948 (9th Cir. 1992); <u>Black</u>, 767 F.2d 1334, 1341 (9th Cir. 1985).  The extent of the waiver is determined by whether the question reasonably relates to subjects covered by defendant's direct testimony.  <u>United States v. Hearst</u>, 563 F.2d 1331, 1340 (9th Cir. 1977).  Federal Rule of Evidence 608(b) provides that:

> [E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

The defendant's credibility will be crucial if he chooses to testify.  Accordingly, cross-examination of the defendant about other fraudulent conduct in which he may have engaged is necessary for the jury to weigh whether his denial of knowledge and fraudulent conduct is credible given any other actions.  As the Ninth Circuit has held, Rule 608(b) "specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility.  Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness."  <u>United States v. Gay</u>, 967 F.2d 322, 328 (9th Cir. 1992).  Additionally, Fed. R. Evid. 404(b) does not proscribe the use of other act evidence as an impeachment tool during cross-examination.  <u>Id.</u>

## H.   Defense Witnesses

Defendant has not identified any witnesses he intends to call. In fact, as of April 17, 2017, the defendant has indicated through counsel that he does not plan to call any witnesses.  To the extent defendant changes his mind and elects to call witnesses at trial, the government requests that the Court order defendant to provide an

offer of proof with respect to the anticipated testimony of those witnesses so that the government may assess whether their testimony would be relevant and otherwise admissible, and whether their testimony would implicate any Fifth Amendment rights those witnesses might have, before the witnesses take the stand.

## VI.  RECIPROCAL DISCOVERY

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that he or she intends to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure.  Rule 16 imposes on defendants a continuing duty to disclose these categories of materials.  Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

The Ninth Circuit has held that where a defendant fails to produce reciprocal discovery or fails to provide timely notice of his or her intention to call an expert witness, it is well within the district court's discretion to exclude such defense evidence, especially where the defense disclosure was made after the start of trial.  See United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999) (upholding district court's decision to exclude defense evidence due to defendant's strategic decision to withhold discovery until the last minute); United States v. Aceves-Rosales, 832 F.2d 1155, 1156-57 (9th Cir. 1987) (holding that district court did not

abuse its discretion in precluding medical report that the defense wished to introduce in case-in-chief but which it disclosed for the first time after the government had rested); <u>United States v. Moore</u>, 208 F.3d 577, 578 (7th Cir. 2000) ("courts are entitled to exclude evidence that should have been produced during reciprocal discovery in criminal cases").

As of the filing of this brief, defendant has provided to the government approximately 500-600 pages of documents, some of which he has stated he may seek to use at trial.  Defendant has not provided notice of his intention to call an expert witness and has stated to the Court on April 10 and April 17, 2017 that he does not expect to call an expert witness.

**VII.  CONCLUSION**

The government respectfully requests permission to file additional trial memoranda if necessary.

Dated: April 21, 2017            Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


_____/s/Michael G. Freedman_____
MICHAEL G. FREEDMAN
KATHERINE A. RYKKEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA