Edward M. Robinson, Bar 126244
**LAW OFFICE OF EDWARD ROBINSON**
21515 Hawthorne Boulevard Suite 730
Torrance, CA 90503
310.316.9333 office
310.316.6442 fax
Email: eroblaw@gmail.com

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>Michael Mirando<br><br>                    Defendant. | CASE NO.: 2:16-CR-0215-PA<br><br>POSITION REGARDING SENTENCING, OBJECTIONS TO THE PRE-SENTENCE REPORT, DECLARATION OF COUNSEL, EXHIBITS IN SUPPORT THEREOF<br><br>DATE: October 30, 2017<br>TIME: 8:30 a.m<br>HONORABLE Percy Anderson |

   Defendant, MICHAEL MIRANDO, by and through his counsel of record, Edward M. Robinson, hereby submits his Position regarding sentencing and Objections to the pre-sentence report ("PSR").  This position and these objections are based upon the memorandum of points and authorities, declaration of counsel, exhibits attached hereto as well as any evidence and argument presented at the sentencing hearing.

\\

\\

1

DATED:  October 16, 2017                    Respectfully Submitted,

*Edward M. Robinson /S/*
Edward M. Robinson
Attorney for Defendant
MICHAEL MIRANDO

2

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................5

OBJECTIONS TO THE PRE-SENTENCE REPORT………………………………..………..6

MEMORANDUM POINTS AND AUTHORITIES................................................................9

18 U.S.C. §3553(a) ANALYSIS…………………………………………………………13

CONCLUSION........................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

*Nelson V. United States*, 555 U.S. 350 (2009)……………………………………………………… 9

*United States v. Jones*, 135 S.Ct. 8 (2014)……………………………………………….…….. 9

*United States v. Popov*, 742 F.3d 911 915-16 (9th Cir. 2014)…………………….………. 10

*United States v. Singh*, 390 F.3d 168, 194 (2d Cir. 2004)……………………………......... 10

*United States v. Staten*, 466 F.3d708, 717-718 (9th Cir. 2006)…………………………….11

*United States v. Hymas*, 780 F.3d 1285,1290 (9h Cir. 2015)…………………………………11

*United States v. Valensia*, 222 F.3d 1173(9th Cir. 2000)……………………………………...11

*United States v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008)………………………….15

*United States v. Cole*, 622 F. Supp. 2d 632 (N.D. Ohio 2008)…………………………….…..15

*United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008)…………………………………17

*United States v. Garrison,* 560 F. Supp. 2d 83 (D.Mass 2008)……………………………….17

**STATUTES**

18 U.S.C. §3553(a) ………………………………………………………….. 5,6,13,14,15,16,17,18

U.S.S.G. §2B1.1(b)(1)(J) ………………………………………………………………….........8

U.S.S.G. §2B1.1(b)(2)(A)(i) (b)(10)(C)………………………………………………….........8,12

U.S.S.G. §3C1.1……………………………………………………………………………….8

Application note, 3(A) to U.S.S.G. §2B1.1………………………………………………………9

18 U.S.C. §1347………………………………………………………………………………..11

U.S.S.G. §1B1.3(a)(1)(A)……………………………………………………………………12

## INTRODUCTION

Appearing before this Court is a 40-year-old man who, but for this case, has led an exemplary life. He is loved by his wife and family and is the proud father of a two-year-old son. How he found himself before this Court is a tragedy. Had he received more timely and informed advice he would not be facing the prospect of such a terrible sentence. The miscalculations and, at best, bizarre advice have caused Mr. Mirando to go to trial on a case where there was no meritorious defense---and none presented.

There were opportunities presented as early as 2013 to resolve this case prior to indictment and certainly prior to trial. As set forth below, the fact that trial counsel appeared to be unfamiliar with how loss was determined under the Sentencing Guidelines, led Mr. Mirando into the mistaken belief that the consequence of going to trial was not grave and that the issue of loss could be addresses post-trial with no real downside. Clearly Mr. Mirando now stands, from an advisory guideline position, in a place that was entirely avoidable. Counsel asks this Court to rectify this situation.

Importantly, through the objections of counsel to the offense conduct section and advisory guideline calculations in the PSR, there is insufficient evidence to support the extraordinarily high upward adjustment for loss. As the 18 U.S.C. §3553(a) analysis is largely co-extensive with the guideline objections, a significantly reduced sentence is called for whether through the application of the advisory guidelines or by virtue of a variance. The cumulative effect of the additional specific offense characteristics added to the loss recommendation create due process concerns.

Attached hereto is a comprehensive report prepared by Michael F. Arrigo, which, in great detail and overwhelming support, rebuts the claim that Mr. Mirando's intended loss figure is as

set forth in the PSR. In the letter attached to Mr. Arrigo's report he outlines how the methodology employed to calculate the "intended loss" is defective and unreliable. Mr. Arrigo, with impeccable credentials and experience, details the insurance companies' business model of, regardless of the merit of the claim for payment, and, for reasons entirely unrelated to suspicions of fraud, refuse to pay upwards of 70% of submitted claims. Finally, Mr. Arrigo, consistent with the evidence that Mr. Mirando had no meaningful training on how to bill other than from Mssrs. Crowley and Cast, two practiced fraudsters, establishes that what appear to be "duplicate claims" are largely nothing of the sort. (Exhibits A-D).

Finally, intertwined with the fact that Mr. Mirando received bad and harmful advice on how to treat this investigation and the decision to go to trial, is the sentence received by Mssrs. Parsons. The unwarranted disparity that looms large from the recommendation of probation vis-à-vis the year and a day sentences of Mssrs. Parsons must be reconciled with a similar sentence for Mr. Mirando. To do otherwise would be 'unjust' and run afoul of the mandate in 18 U.S.C. §3553(a).

I

**OBJECTIONS TO THE PRE-SENTENCE REPORT**

**The Offense Conduct**

Mr. Mirando objects to the Offense Conduct section of the PSR as set forth in paragraphs 20-36. Particularly, Mr. Mirando objects to the conclusory statements in paragraphs 28 and 29 which, with no reference to methodology employed, set forth naked allegations of improper duplicate billings and billings for services not rendered.

In rebuttal, Mr. Mirando proffers Mr. Arrigo's expert report. The report details the mathematical, methodological and industry practice of denying meritorious claims that more than creates significant doubt as to the reliability of the claimed intended loss.

Given the insignificant number of claims analyzed, there is not a valid methodology to form a statistically valid method to extrapolate fraud from the dollar figure of the submitted and paid claims. (Arrigo report p. 14-23). The insurance companies' practice of paying only approximately 30% of submitted claims coupled with the practice of re-billing, cost of appealing denials and the complexity of "code billing," provide substantial reason to doubt the methods and amounts relied on in the PSR to establish intended loss, particularly with respect to the alleged duplicate billing and billing for services that allegedly could not be rendered. (Arrigo report p. 9-12, 29-52). Given the industry practice of denying claims for reasons other than fraud, and the critical evaluation of the 'duplicate billing' and 'services rendered,' there can, with a degree of certainty, be an argument that not only is there no intended loss, but actually, for meritorious claims, the insurance companies may owe Mr. Mirando for services rendered. (Arrigo report p. 25).

Further evidence of the defective foundation for the "loss" calculation in the PSR is the testimony of Mr. Crowley concerning Mr. Mirando's 'improper billing.' While Mr. Crowley was made to admit that Mr. Mirando had no experience in medical billing, specifically code billing, and that Mr. Cast, an admitted fraudster, had taught Mr. Mirando how to bill, Mr. Crowley, like Agent Kennedy, "googled" the codes billed to determine the fraud. (Trial transcript day 3, pages 18, 46, 76, 132). Both Mr. Crowley and Agent Kennedy testified that they had little to no experience or training in code billing. Mr. Crowley was unable to certify the number and type of devices used. Mr. Crowley had "an understanding" that the information in

the reports he created from the data collected from the device would be sent to Mr. Mirando for billing purposes. These reports generated sleep apnea results from the monitoring of heart rates and yet, from the "google" research conducted, this was enough to claim fraud for loss purposes. Mr. Crowley examined the marketing materials and website created by Mr. Mirando, which included the sleep apnea feature. Mr. Crowley testified that he saw nothing improper with the representations included. Furthermore, the only proof of which devices were used was from a spreadsheet that Mr. Crowley provided Agent Kennedy. (Trial transcripts, trial day 3, pages 85, 169-170).

As such, Mr. Mirando objects to the Offense Conduct section of the PSR, and, specifically objects to the conclusory formula set forth in paragraph 34 as used in the Offense Level Computation section of the PSR as set forth in paragraphs 40-57.

**Offense Level Computation**

For the reasons set forth herein and as detailed in Mr. Arrigo's report, Mr. Mirando specifically objects to the 18-level recommended Specific Offense Characteristic for intended loss per U.S.S.G. §2B1.1(b)(1)(J) as set forth in PSR paras. 45-46.

Additionally, for the reasons set forth below, Mr. Mirando objects to the cumulative 4-level upward adjustment as set forth in PSR paragraphs 47-49, for more than 10 victims and for the offense involving sophisticated means per U.S.S.G. §2B1.1(b)(2)(A)(i), (b)(10)(C). Mr. Mirando objects to the application of the sophisticated means adjustment as the conduct, at best, was designed to prevent Mr. Crowley, and not an insurance company, of learning of billing proceeds.

Finally, Mr. Mirando objects to the 2-level upward adjustment recommended in paragraph 53 of the PSR for Obstruction of Justice per U.S.S.G. §3C1.1. Mr. Mirando has been

punished for this.  Additional punishment, especially the amount called for by the increase in offense level is unnecessary.

II

**MEMORANDUM OF POINTS AND AUTHORITIES**

**THE ADVISORY GUIDELINE UPWARD ADJUSTMENTS ARE BASED UPON INSUFFICIENT EVIDENCE AND THE APPLICATION AS TO MR. MIRANDO VIOLATES DUE PROCESS, HIS RIGHT TO A JURY TRIAL, AND HIS RIGHT TO AN INDIVIDUALIZED SENTENCE.**

The sentencing guidelines are merely advisory and at the district court level they are not to be presumed reasonable. *Nelson V. United States*, 555 U.S. 350 (2009).  Where a specific offense characteristic upward adjustment is so large that it has a disproportionate impact on a sentence, due process concerns are implicated. While not yet the law, Sixth Amendment concerns mesh with substantive unreasonableness, where "judge's finding of fact" render a sentence that is significantly longer than one based upon a guilty plea or jury conviction.  *United States v. Jones*, 135 S.Ct. 8 (2014)(Justice Scalia dissent from denial of certiorari).

This is precisely the case here.  But for the presentation of a vast universe of claims that have not been subjected to critical analysis using proper methodology, Mr. Mirando, from the jury's verdict, would face no upward adjustment.  (Arrigo report p. 18).

With this in mind, questions of what amounts to a prima facia case of intended loss and what burden of proof applies collide.  Mr. Mirando's advisory guidelines are subject to an upward adjustment of 18 if this Court were to conclude that the simple mathematical formula used by probation was sound.  The Sentencing Commission in application note 3(A) to U.S.S.G. §2B1.1, defines intended loss to include, "intended pecuniary harm that would have been

impossible or unlikely to occur (e.g., [in] an insurance fraud in which the claim exceeded the insured value.)." The Ninth Circuit in *United States v. Popov*, 742 F.3d 911 915-16 (9th Cir. 2014), held, "[i]n health care fraud cases, the amount billed to an insurer shall constitute prima facia evidence of intended loss for sentencing purposes. If not rebutted, this evidence shall constitute sufficient evidence to establish the intended loss by a preponderance of the evidence."

The court in *Popov,* in joining other Circuits in establishing this "burden-shifting" framework for intended loss determination in health care fraud cases, cited *United States v. Singh*, 390 F.3d 168, 194 (2d Cir. 2004), as an example of what type of evidence served as rebuttal evidence. The court noted, "[b]ecause the evidence in the record supported a finding that the defendant was intimately familiar with Medicare's fixed rate billing practices, [the sentence was vacated] with regard to the calculation of loss amount to allow the defendant an opportunity to show that the amount he intended to receive from the insurers was less than the total amount he billed." *Popov* citing *Singh* at 916.

As set forth in Mr. Arrigo's report, it is irrefutable that the insurance industry only pays approximately 30% of all claims submitted, regardless of merit. Pages 9-14 of Mr. Arrigo's report sets forth a detailed presentation of the motives of the insurance payors and what a submitter of bills may expect to be paid. Centers for Medicare and Medicaid (CMS) note, "claims rejected as duplicates may be valid claims for payment, if the correct condition codes or modifiers are applied to demonstrate a claim isn't really a duplicate." (Arrigo report p. 12). From this evidence it is clear that using the amount billed as the basis for establishing intended loss is not only improper, as it has been rebutted, but also unconstitutional.

The PSR calculates Mr. Mirando's total offense level as 30. (PSR para. 57). In a Criminal History Category I the advisory range is 97-121 months. Including the other 6 levels

recommended by probation for number of victims, sophisticated means and obstruction of justice, and only focusing on loss, the 18 levels recommended by probation using the claimed submitted as evidence of intended loss, Mr. Mirando's advisory range at 12 Criminal History Category I, would be 10-16 months. Taking out the number of victim 2-level upward adjustment Mr. Mirando's range would be 6-12 months.

The Ninth Circuit in *Popov* is silent about the constitutional concerns where intended loss which is not admitted as part of a plea of the subject of a jury verdict drives such an astronomical increase in the guideline calculation. The Ninth Circuit in *United States v. Staten*, 466 F.3d708, 717-718 (9th Cir. 2006), held that where an upward adjustment has, "an extremely disproportionate effect on the sentence imposed," a clear and convincing standard of proof applies. In *Staten*, the "extremely disproportionate effect" effect was to more than double the defendant's sentence.

In *United States v. Hymas*, 780 F.3d 1285,1290 (9h Cir. 2015), the Court, citing *United States v. Valensia*, 222 F.3d 1173(9th Cir. 2000), focused on a totality of the circumstances test to judge whether the effect of an upward adjustment was such that the clear and convincing standard applied. Among the factors cited are whether the sentence falls within the statutory maximum, lessens the government's burden of proof, whether the increase in the number of offense levels is less than or equal to four and, whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

In this case, the government elected to charge 15 counts of Health Care Fraud. The statutory maximum is ten years for a violation of 18 U.S.C. §1347. The number of counts versus the vast universe of claims that were not adjudicated by a jury highlights the due process

concern. Conviction on one count would have been sufficient to trigger the upward adjustment. The 18-levels for loss when combined with the other 6-levels create a sentence that, at the high end, exceeds the statutory maximum of 10 years. If held only to a preponderance standard, the sentence, with no admission or jury finding, will increase 8-fold, be substantially greater than 4-levels and will place Mr. Mirando in a federal prison, not for a reasonable time based on the counts found by a jury, but for up 25% of his lifespan without a guilty plea or verdict on the uncharged document.

This "extremely disproportionate effect" demands that the government prove the loss adjustment to a standard of clear and convincing evidence. Otherwise, Mr. Mirando will have suffered an unconstitutional deprivation of his due process and trial rights guaranteed by the Fifth and Sixth Amendments to the Constitution. As set forth in Mr. Arrigo's report and the evidence referenced herein, there is insufficient evidence to establish loss within the meaning of the guidelines.

Mr. Mirando, for the same foundational and constitutional reasons he objects to the intended loss upward adjustment, objects to the 2-level upward adjustment for more than 10 victims as set forth in paragraph 47 of the PSR.

Finally, Mr. Mirando objects to the 2-level upward adjustment for use of sophisticated means per U.S.S.G. §2b1.1(B)(10)(C). The evidence suggests that Mr. Mirando formed Murrieta Medical Supply for the purpose of keeping proceeds of the business from Mr. Crowley, not to further a medical fraud scheme. U.S.S.G. §1B1.3(a)(1)(A) defines relevant conduct, from which the advisory guideline range is to be determined, as conduct that is related to the "offense of conviction." There is insufficient evidence to establish that Mr. Mirando and his formation of Murrieta Medical Supply, was formed for any purpose other than to, at worst, conceal billing

proceeds from Mr. Crowley. As such, Mr. Mirando requests that this Court sustain his objections to the advisory guidelines.

### 18 U.S.C. §3553(a) ANALYSIS

Mr. Mirando should never have been in this position. As early as 2013 he became aware that he was being investigated for his billing. He retained counsel to advise him about what course of action to take. He was told that if the government was interested in prosecuting him they would send him a "target letter." Needless to say, this didn't happen. Post indictment, Mr. Mirando was led to believe that there was no real downside to going to trial. This gross miscalculation appears to be inspired by the fact that prior counsel did not understand how intended loss would drive the advisory guidelines. On the 2nd day of trial, this Court asked counsel, in the context of whether it made a difference on one of the charged counts that the claim may have been submitted but not paid, government counsel advised this Court that intended loss was sufficient. Prior counsel responded, "I'm not entirely sure about that." (Reporter's transcript day 2, p. 227).

Mr. Mirando did not present any evidence at trial. He had retained Mr. Arrigo, at prior counsel's request, to prepare a report concerning billing. Mr. Mirando never talked in any detail with his prior counsel concerning how this analysis could be used, not for a defense at trial, but for plea bargaining-sentencing purposes. To go to trial without understanding how loss affected his sentence, and the cost of going to trial as it affected his exposure and to have had retained an expert but not used him makes no sense.

Mr. Mirando has the support of his family. Attached to this paper is a letter from his wife Sarah. In that letter she describes a man who is broken with grief. She also describes a man who has suffered greatly and wants to change. Mr. Mirando's self-reflection and honest

assessment of what has happened to him and his life is powerful evidence of his recognition of the seriousness of the offense. It also is a strong indicator that he will never be in this situation again, which negates the need for incarceration to protect the public.

The other letters from friends and family describe a law-abiding family man who is quick to help others. He has received acclaim for his public service. He is willing to risk his safety to assist others in need. His personal history and characteristics, which form half of the backdrop for which this Court must consider in fashioning a sentence that is not "greater than necessary" to promote the factors of sentencing, are extraordinary. 18 U.S.C. §3553(a)(1).

The nature and circumstances of the offense are the other half of the backdrop against which this Court must fashion a sentence. 18 U.S.C. §3553(a)(1). As established at trial and as referenced in Mr. Arrigo's report, Mr. Mirando had no training, schooling or experience in this type of billing. Mr. Cast taught him how to bill and Mr. Crowley sent him the information on which to rely. Mr. Arrigo, in his report, addresses how Mr. Mirando's unfamiliarity with complex medical billing, and his reliance on others like Cast and Crowley, could have created the appearance of grossly exaggerated fraudulent billing. On page 12 of his report, under the heading, "[p]roviders Who Attempt to Perform Complex Medical Billing on Their Own Have Higher Denials and More Regulatory Inquiries. Mirando Was Ill-Advised to do his Own Coding and Billing," Mr. Arrigo explains how, even though Mr. Mirando did not possess the expertise to understand this complex billing system, a strict scrutiny of the billings using CPT modifiers, supervisory guidelines and claim scrubbing software, would have lessened the problematic claims. The appearance of fraud that drives the misguided intended loss analysis in the PSR is, to a great degree, dissolved by a critical understanding of the "nature and circumstances of the offense." Finally, the insurance companies' business model which, for reasons unrelated to

preventing fraud, that pays only approximately 30% of submitted claims regardless of the work performed or the service rendered, must be taken into account in critically evaluating the "nature and circumstances" of this offense as applied to Mr. Mirando. For instance, Aetna has been repeatedly fined by various state agencies and sued by providers for improperly refusing to pay various claims in accordance with applicable laws and regulations. (7/25/07 Philadelphia Business Journal. *N.J. fines Aetna Health $9.5 Million*, available at http://philadelphia.biz journals.com/Philadelphia/stories/2007/07/23/daily25.html?jst=b)

Against this backdrop this Court must impose a sentence that is "not greater than necessary" to promote respect for the law, reflect the seriousness of the offense, provide just punishment, protect the public from future crimes of Mr. Mirando, deter others and avoid unwarranted disparity. 18 U.S.C. §3553(a) et. sec.

This conduct is more than 5 years old. Mr. Mirando has demonstrated significant remorse for his behavior. Given the chance and properly advised, Mr. Mirando would have settled this matter early on, likely to an information with favorable guideline stipulations and an ability to use Mr. Arrigo's report in the process. What jumps out from this case and who Mr. Mirando is demonstrates how unnecessary it is to incarcerate Mr. Mirando to protect the public. "of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is the one of the greatest practical concern and is most capable of being measured. Judges should be encouraged to impose probation or a below Guideline sentence in light of this purpose." *United States v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008).

To incarcerate Mr. Mirando to provide deterrence to others is easily subject to imposing a sentence that is "greater than necessary." With a defendant like Mr. Mirando, who, according to a Sentencing Commission study, by his age, family support, lack of criminal history or alcohol or

15

drug abuse, poses little to no risk of re-offending, incarceration to promote this factor poses an ethical dilemma. U.S. SENTENCING COMM'N MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (May 2004).

> "[g]eneral deterrence uses a utilitarian calculation subjecting defendants to longer periods of incarceration than retribution requires to 'send a message' to other potential offenders. Inherent in this general deterrence calculation is a tension between individual dignity and societal good, begging the question: is it ethical to impose a greater-than necessary punishment upon an individual defendant to protect society at large?" *United States v. Cole*, 622 F. Supp. 632 (N.D. Ohio 2008).

Mr. Mirando is almost certain to never re-offend. To incarcerate him to make a point violates the mandate of §3553(a) by creating an ethical dilemma for which Mr. Mirando cannot be placed on it horns.

Finally, 18 U.S.C. §3553(a)(6) mandates that sentencing courts impose sentences that avoid "unwarranted…disparities among defendants with similar records who have been found guilty of similar conduct." In this case, Mr. Crowley is an unindicted co-conspirator. Mr. Cast is the one who taught Mr. Mirando how to bill. Both of these unsavory characters came to work with Mr. Mirando after they learned their trade from a Mr. Robert Parsons. As set forth in footnote 2, page 6 of the PSR, Mr. Parsons was convicted for health care fraud "for fraudulent cardiac monitoring billing, including fraudulent claims for Holter device tests." Mr. Parsons pled to an information in case number SA 06-00152(A)-DOC. He was held responsible only for the amount of fraudulent billing for which he received payment. The government agreed not to seek any upward adjustments other than this lesser loss figure and more than minimal planning. Mr. Parson's total offense level was 13. (Parson's plea agreement SA 06-00152(A)-DOC, Doc.

8). Matthew Parsons plead guilty to 5 counts of Health Care Fraud in a 27-count indictment. (SA CR 03-00333-JVS). Like his brother Robert, Matthew Parsons was sentenced based upon the amount he received from fraudulent billings, not the claims submitted. In his plea agreement, the government agreed not to seek any upward adjustments or upward variances from a total offense level of 13. Mr. Parsons retained the right to argue for a downward variance per 18 U.S.C. §3553(a). Like his brother, Matthew Parsons was sentenced to1 year and a day in prison, restitution and no forfeiture. (SA CR 03-00333-JVS, Parsons plea agreement (Doc. 55), Judgement and Commitment Order (Doc. 117).

If Mr. Mirando had received proper advice, he may have been in the same place as Mssrs. Parsons. Clearly, he is similarly situated under the definition of 18 U.S.C. §3553(a)(6). As set forth above, Mr. Robert Parsons was sentenced to 1 year and a day, 2 years of probation and ordered to pay $307,899.87 in restitution. There appears to be no order of forfeiture. (Doc. 80). To sentence Mr. Mirando to more than Mssrs. Parsons would be unjust. To order his house forfeited based upon the proof presented in this memo as well as Mr. Arrigo's report would be unconstitutionally confiscatory. Any restitution above the amount of actual loss would be illegal.

A variance to cure this unwarranted disparity is supported by case law. In *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008), the district court varied from a 56-month sentence to a year and a day to avoid disparity between an analogous case and the one before the court. In *United States v. Garrison*, 560 F. Supp. 2d 83 (D. Mass. 2008), the district court imposed a lower than guideline sentence for unrelated defendants arrested and charged out of the same drug sweep noting that the Guidelines were not a fair way of determining which defendants

are "similarly situated" because they "mask real differences between offenders" and create "false uniformity."

The guideline sentence that results from the calculations in the PSR fails by virtue of its inherent frailty in assisting in an individualized sentence. It is unreasonable.  The guideline recommendation fails to take into account the failure of Mr. Mirando's prior counsel to properly advise him of the huge benefits of an early disposition.  The guideline sentence does not account for the failure of the use of Mr. Arrigo's report in plea negotiations.  The fact that Mr. Mirando was laboring under the uncounseled belief that there was not much difference between going to trial and settling the case is no fault of his own.  He must be placed in a similar situation as Mssrs. Parsons in order to account for Mr. Crowley and Mr. Cast's involvement and for the uneducated advice he received. Since there was no "target letter" opportunity, this Court, in compliance with the mandate in 18 U.S.C. §3553(a), must sentence Mr. Mirando in a fashion consistent with Mr. Parson's sentence.

## CONCLUSION

For the reasons set forth herein, Mr. Mirando asks that this Court sentence him to a term of probation, with an appropriate term of incarceration to be served in a community correction facility.  Furthermore, Mr. Mirando requests that this Court order restitution in the amount of the actual loss suffered by the insurance companies, $10,695.00, and that the forfeiture order be amended to reflect this amount to be satisfied by substitute assets other than Mr. Mirando's house.

DATED:  October 16, 2017                          Respectfully Submitted,

*Edward M. Robinson /S/*
Edward M. Robinson
Attorney for Defendant
MICHAEL MIRANDO

18

**DECLARATION OF COUNSEL**

1. That I represent Mr. Mirando.

2. That I have discussed with Mr. Mirando his right to speak at sentencing.

3. That in the course of my representation of Mr. Mirando he has discussed with me his reasoning for going to jury trial as well as his decision not to settle his case at the earliest opportunity.

4. That Mr. Mirando will address the Court at sentencing regarding the following:

a. That he became aware of this federal investigation in September 2013.

b. That upon becoming aware of the federal investigation, Mr. Mirando, through civil counsel, retained Mr. Kevin Mc Dermott.  Mr. Mc Dermott advised Mr. Mirando that he did not need to worry and that if the FBI or the United States Attorney was interested in him they would send him a "target letter."   Mr. Mirando asked if it would be wise to reach out to the government, Mr. Mc Dermott advised against this.

5. That during the course of Mr. Mc Dermott's representation post indictment, Mr. Mc Dermott never met with Mr. Mirando to explain how the sentencing guidelines applied.  He never explained how loss was calculated, how the upward adjustments could apply, and he did not explain the benefit of an early plea or how the factors in 18 U.S.C. §3553(a) applied.  In fact, Mr. Mc Dermott never discussed the sentencing law with Mr. Mirando.

6. That during the course of his relationship with Mr. Mc Dermott, Mr. Mirando repeatedly asked to settle this case.  Mr. Mirando even asked Mr. Mc Dermott during trial if this case could be settled. Mr. Mc Dermott told Mr. Mirando that he had the wrong attorney if he wanted to "make a deal."

7. That Mr. Mirando, at the request of Mr. Mc Dermott, hired Mr. Arrigo to prepare for trial as an expert.  That, as is evident, Mr. Arrigo was not used as an expert at trial and that, from his report, it is clear that his expertise is critical to sentencing arguments and not for a defense.

8.  That had Mr. Mirando been properly advised concerning the benefits and opportunity for an early plea, and given his desire to plead guilty, Mr. Mirando would not have gone to trial.

I declare under the penalty of perjury that the above is true and correct.


DATED: October 16, 2017                                              /s/ Edward M. Robinson
                                                                          _____
                                                                          EDWARD M. ROBINSON