# EXHIBIT D

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

# Michael F. Arrigo Expert Witness Litigation Experience

## Cases Where Expert has Provided Testimony

## October 9, 2017

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

**Federal Cases** ........................................................................................................................ **3**
- (R) U.S. and California ex rel. Julie Macias v. Pacific Health et al .................................... 3
- (P) Jenee Hill on behalf of herself and all others v United Healthcare Insurance .... 4
- (P) Confidential v. Confidential in matter before Federal Trade Commission .......... 4
- (D) U.S. Attorney General v. Confidential Hospital System in Ohio .............................. 5
- ('R) United States Ex. Rel. Manijeh Nikakhtar MD v. Mission City, Nick Gupta......... 5
- (D) United States Ex. Rel. v. Michael Mirando and Holter Labs...................................... 6
- (P) *Allstate v Confidential Defendants* ................................................................................... 6

**State Cases** ............................................................................................................................... **7**
- (P) HITECH Medical Consulting v. NextCare ......................................................................... 7
- (D) SF Spine v. Claimworks JAMS Reference No. 1110018697 ........................................ 8
- (D) Billrite billing solutions, Inc. Spine and & Nerve Diagnostic Center. ................... 8
- (D) McDermott v. Children's Hospital of Philadelphia ...................................................... 9
- (P) Graewingholt et al v St. Josephs' Health System.......................................................... 10
- (D) Confidential Plaintiff v. Pasadena School District ....................................................... 11
- (P) R.D., vs. Providence Health Services et al ....................................................................... 12
- (D) Confidential Plaintiff (Jane Doe) v. Brigham and Women's Hospital..................... 13
- (P) Jane Doe vs United Medical Center and Innovative Staffing Solutions............... 14
- (P) Jessica Umstead, Plaintiff v. Mercy Hospital, Cedar Rapids Iowa ......................... 15
- (P) Jacqueline Krouse v. Avera Health and Chris Krouse.................................................. 16
- (P) FT v. Children's Mercy Hospital ......................................................................................... 17
- *(D) Paulette Diaz, et al, vs. MDC Restaurants, LLC et al;* ................................................... 21
- (D) Natalie Torres v Pocatello Children and Adolescent Clinic, et al.,...................... 21
- (D) *Bradley Welding v Franscali and Orthopedic Associates of Northern Illinois* .... 22
- *(P) Giraldo v. Canta and Groceryworks.com et al* ............................................................... 22
- (P) UCLA Medical Center v. Blue Cross Blue Shield............................................................ 23
- (P) *Rhodes v Renown* .................................................................................................................... 23
- (P) *John D. Thomson v. HMC Group, Torrance Medical Center*........................................ 24
- (D) *Joann Hilton v. USA Logistics Carriers, LLC and Jose Juan Soto-Estrada* ............. 25
- (D) *Raul Martinez v. Lee Ill Young*........................................................................................... 25
- (D) Jorge Uribe v. City of Maywood and Andrew Serrata ............................................... 25
- *(D) Billrite v Vinay M. Reddy, MD, Spine & Nerve Diagnostic Center.* ......................... 26
- *(D) Rose v. Herfy's and Lee*......................................................................................................... 27
- *(D) Derkack v. Boyd* ...................................................................................................................... 28
- *(D) Tamie Lobin v. J.B. Hunt Transport, Inc. and Roosevelt Allen.*................................. 30
- *(P) Medical Acquisition Company, Inc. v. Southwest Law Center et al* ......................... 31

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

## Federal Cases

- (R) U.S. and California ex rel. Julie Macias v. Pacific Health et al

*Case CV-12-00960 RSWL* Expert report July 2017. *Provide* an opinion of the amount of damages for both Medicare Part A and Part B and Medi-Cal based on potential fraud, improper patient referrals and anti-kickback violations, cost report fraud, and claims submitted for services provided by physicians and clinical staff for a free-standing psychiatric hospital and a hospital that was designated as a Disproportionate Share Hospital ('DSH').  Basis of opinions: analysis of over 1 million claim files, patient records and supporting documents, use of industry best practices and guidelines; The U.S. Department of Health and Human Services Centers for Medicare and Medicaid (CMS) views health care providers as vital in protecting the integrity of the Medicare Program by submitting accurate claims, maintaining current knowledge of Medicare billing policies, and ensuring all documentation required to support the medical need for the service rendered is submitted when requested by the MAC. Medical Necessity standards, "In addition to correct claims completion, Medicare coverage and payment is contingent upon a determination that an item or service:

• Meets a benefit category;
• Is not specifically excluded from coverage; and
• Is reasonable and necessary.[1]

---

[1] *Medicare Billing: 837I and Form CMS-1450*, source: U.S. Department of HHS, Centers for Medicare and Medicaid.   https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/837I-FormCMS-1450-ICN006926.pdf

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (P) Jenee Hill on behalf of herself and all others v United Healthcare Insurance

United States District Court, Central District of California, Southern Division. Case SACV15-00526 DOC (RNBx). Declaration March 6, 2017 in support of Plaintiff's reply to opposition to renewed motion to certify case as a class action. Opinions regarding the function of Utilization Management best practices and regarding health plan industry best practices, generally accepted industry standards and customary guidelines followed by health plans in the normal course of business processes, and information technology with respect to UHIC's ability to identify members for which it has denied requests for prior authorization for a surgical procedure associated with CPT medical code 22857, health plan H-Plan identifiers, and Medical Loss Ratio reporting.

- (P) Confidential v. Confidential in matter before Federal Trade Commission

Preparation for litigation filings in California, New York, Florida, Texas State Attorneys General - Estimates of financial impact on U.S. health population under fee for service Medicine and health insurance reimbursement rates under both fee for service medicine and risk adjusted value based care, and how rates are set based on Computer Assisted Coding and the Affordable Care Act. Litigants are two of the largest healthcare firms in America with market capitalizations of over $10 billion. Medical coding and economics healthcare expert consultant for landmark litigation; worked directly with former RAND Economists, Jonathan Schiller at Boies Schiller and Flexner LLP re provider ICD-9, CPT and ICD-10 medical coding and billing as provided for in 45 CFR 162.1002 that adopted the ICD-10-CM and ICD-10 PCS code sets as HIPAA standards.  Prepared for expert testimony which counsel anticipated would go before Commissioner Brill or Ramirez regarding functions of encoder software, computer assisted coding, Meaningful Use of Electronic Health Records under the ARRA HITECH Act, access to data as precursor to computer assisted coding, anti-trust and macroeconomics of care in health plans based on data interoperability; consideration of IT switching costs, payor-provider contracting practices and

4

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

economics; preparation for expert report and Daubert hearing; case settled and sealed. Expert report.  Due to the terms of the settlement agreement, the case is sealed and I am not permitted to disclose the names of the litigants.

- (D) U.S. Attorney General v. Confidential Hospital System in Ohio

 Prepare and deliver testimony before AUSA, OIG, HHS and FBI re: investigation into Meaningful Use of Electronic Health records (ONC certification of software and CMS, Medicaid Attestations) to defend client against potential litigation related to False Claims Act.

- o  45 CFR §170.314 (subsections); 45 CFR §170.304 electronic health record certification criteria (Meaningful Use)
- o  HIPAA Privacy and Security Assessment
- o  31 U.S.C. § 3729.  (a) False Claims Act with respect to IT systems, processes and people to maintain accurate records.

- ('R) United States Ex. Rel. Manijeh Nikakhtar MD v. Mission City, Nick Gupta

CV 12-3692-PSG (SHX) - United States District Court, Central District of California. Expert report 2015. Opinion re: industry best practices and guidelines to comply with Section 10501(i)(3)(B) of the Affordable Care Act, and whether data reporting under the ACA is also a financial matter of reimbursement for both CMS / Medicare and California State Medi-Cal during the transition from the All-Inclusive Rate Reimbursement (AIRR) to a new Prospective Payment System (PPS) for Federally Qualified Health Centers (FQHC) and any differences in reimbursement based on national and regional standards and unit of work measures called Relative Value Units (RVUs).  Evaluation of Freedom of Information Act (FOIA) obtained materials regarding FQHC compliance to U.S. HHS / Health Resources and Services (HRSA) standards and Medicare Part C reimbursement under risk adjustment scenarios. Evaluation and management (E&M), pathology, medication management fees and other coding and billing regulations and industry best practices.  Patient population includes skilled nursing, behavioral health, ambulatory settings.

Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided
Updated October 9, 2017

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (D) United States Ex. Rel. v. Michael Mirando and Holter Labs – CASE NUMBER CR 16-0215 - United States District Court, Central District of California.  Opinion re: Damages calculations.  Expert report March 2016.  Damages hearing August 2017. Independent Diagnostic Testing Facility (IDTF), use of FDA Approved devices for ECG and EEGs, associated CPT codes, patient charts, government methodologies.  Damages calculations for potential sentencing and restitution. Examination of FDA 510(k) forms, frequency sampling rates vs. comparable marketed devices for ECG and EKG.  Statistical sampling of patient charts, projected accuracy in Government's methodology compared to sample sizes required for 95% to 99% certainty ('beyond reasonable doubt') vs. 51% 'reasonable degree of certainty.'  Produce analytics of claims data, patient referrals for damages calculations.  Medical procedures included:

  95812 - Electroencephalogram (EEG) extended monitoring; 41-60 minutes
  95813 - Electroencephalogram (EEG) extended monitoring; greater than 1 hour
  95816 - Electroencephalogram (EEG); including recording awake and drowsy
  95819 - Electroencephalogram (EEG); including recording awake and asleep
  95822 - Electroencephalogram (EEG); recording in coma or sleep only
  95827 - Electroencephalogram (EEG); all night recording
  95950 - Monitoring for identification and lateralization of cerebral seizure focus, electroencephalographic (e.g., 8 channel EEG) recording and interpretation, each 24 hours
  95951 - Monitoring for localization of cerebral seizure focus by cable or radio, 16 or more channel telemetry, combined electroencephalographic (EEG) and video recording and interpretation (e.g., for presurgical localization), each 24 hours
  95953 - Monitoring for localization of cerebral seizure focus by computerized portable 16 or more channel EEG, electroencephalographic (EEG) recording and interpretation, each 24 hours, unattended.

- (P) *Allstate v Confidential Defendants*

*Damages report November 2015.*  Michigan retained as expert to evaluate nationwide diagnostic imaging reimbursement damages for professional component (PC) and

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

technical component (TC) as well as RVUs focusing on Magnetic Resonance Imaging (MRI) Usual, Customary and Reasonable pricing, CPT coding and billing and resulting charges, and supporting clinical data - Criteria for determining reasonable charges 45 CFR §405.502; Michigan State automobile insurance (no-fault).  No case filed at time of expert report.

## State Cases

- (D) San Francisco Spine Surgeons, LLC v. Claim Works LLC.
  JAMS Reference No. 1110018697, hearing held October 2017 in San Jose, California (Ambler, Arb).  Deposition and testimony at hearing.  Loss / damages calculations opinions in a dispute between a health care provider and billing company. Analysis of thousands of lines of claim data using industry best practices to determine reliability of the data for damages / loss calculations.  Opine re: duties of health care provider and billing company based on knowledge training education and experience, industry best practices and guidelines and U.S. H.H.S. Office of Inspector General (OIG) guidance for third-party billing relationships.  Prepare rebuttal to expert on proper medical coding, billing and loss / damages calculations.  Certified as an expert by Judge ambler, stipulated to by counsel for both litigants.

- (P) HITECH Medical Consulting v. NextCare

Case No. CV2015-00435D Superior Court of the State of Arizona, County of Maricopa. Trial November 2016.  Breach of contract, Unjust Enrichment, Contractual Bad Faith involving consulting firm's implementation of Electronic Health Records in an effort to comply with the ARRA HITECH Act of 2009, Meaningful Use, and HIPAA Standards. Retained to educate attorneys and ultimately the trier of fact regarding the Electronic Health Records, HITECH, and HIPAA, what the implementation and compliance process is, meaningful use core measures and menu measures, quality reporting, meaningful use audits, false information and risks of false claims act.  Explain what patient engagement, smoking status, inoculations, clinical decision support patient

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided
Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

education materials are and why relevant to compliance with Meaningful Use.  Discuss certification process for Electronic Health Records and billing with respect to medical diagnosis, medical procedures and associated medical codes.  Discuss role of U.S. HHS Centers for Medicare and Medicaid, Office of National Coordinator, Regional Extension Centers in achieving Meaningful Use.  Opinions regarding implementation best practices, whether HITECH Med Consulting met best practices, attestation attempts, failures, and success rates as reported by U.S. HHS / CMS and why this is relevant.  Some relevant statutory requirements of the case involving my testimony included but were not limited to:

- 45 CFR §170.314 (subsections); 45 CFR §170.304 electronic health record certification criteria (Meaningful Use)
- HIPAA Privacy and Security Assessments and HITECH Act to ensure the privacy and security and safeguarding of information.
- Accuracy of clinical information
- 31 U.S.C. § 3729.  (a) False Claims Act with respect to IT systems, processes and people to maintain accurate records.

- (D) SF Spine v. Claimworks JAMS Reference No. 1110018697

  Rebuttal expert regarding damages in a dispute between a physician practice and their outsourced medical billing company regarding damages, industry best practices for medical billing companies and the duties of health care providers in facilitating and maximizing billing reimbursements with third party billing companies.  Basis in addition to knowledge training education and experience including U.S. HHS OIG Guidelines for third party billing companies, claims processing and denials, reasons for denials and whether those denials are likely caused by billing company or provider.  Deposition testimony June12, 2017. Arbitration June 2017.

- (D) Billrite billing solutions, Inc. Spine and & Nerve Diagnostic Center.

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

34-2014-00166608 SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SACRAMENTO- serve as expert consultant regarding billing practices and HIPAA Privacy and Security practices in a case involving outsourced medical billing. Opinions regarding 45 CF § 164.402(1) definition of Breach, exclusions for good faith and inadvertent disclosures; 45 CFR 160.103(4)(3) definition of HIPAA Covered Entity and duties; policies and procedures to address security incidents.  This includes (i) identifying and responding to suspected or known security incidents, (ii) mitigating, to the extent practicable, harmful effects of security incidents that are known to the covered entity, and (iii) documenting security incidents and their outcomes.  (See 45 CFR 164.308(a)(6).) obtain satisfactory assurances to protect ePHI (164.314(a)); HITECH Act of 2009, a BA's disclosure, handling and use of PHI must comply with HIPAA Security Rule and HIPAA Privacy Rule mandates.  Industry best practices and guidelines regarding Business Associates, Business Associate Agreements.  Deposition February 2017.

- (D) McDermott v. Children's Hospital of Philadelphia

*In the State of Pennsylvania, County of Philadelphia, Case December 2014 term, NO. 003103. Declaration 2016.* Opinions regarding alleged $9.8 million in damages as future medical expenses covered generally under insurance and specifically under ACA plans, Medicaid and Medicaid waivers and under what conditions they would be covered. Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the New Jersey or Pennsylvania Insurance Exchanges, Medicaid expansion, Federal Poverty Level (FPL) calculations, as well as dual eligible Medicare and Medicaid post age 65, Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP), Minimum Essential Coverage (MEC) and Essential Health Benefits (EHB), analysis as described in New Jersey Law (case venue is Pennsylvania, at the time of this update the court has determined it will be heard under New Jersey Law).  Evaluate metal plan coverage by actuarial value, and cost sharing subsidies to estimate maximum out of

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

pocket for lifetime of patient. Compare Life Care plans and prescribed medical services to those covered in State Benchmark Plans. Determine applicability of Prohibition of Preexisting Condition Exclusions (45 CFR § 147.108) and disabilities. Discuss impact of ACA on companion laws and standards that cover disabled individuals and workplace accommodations for essential job functions, such as Rights and Responsibilities under Section 504 and the Americans with Disabilities Act (ADA) and the Olmstead Plan (including duties of 'Covered Entities' aka "HIPAA Covered Entities" which means, health care providers, payors and others).  Section 1557 of the Patient Protection and Affordable Care Act (ACA), regulations regarding people with disabilities with respect to available benefits.  Section 1557 is intended to "…ensure that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under Section 504 of the Rehabilitation Act of 1973 (disability).

- (P) Graewingholt et al v St. Josephs' Health System

  *Judicial Council Coordinated Proceeding No. 4716 Master Class Action Complaint in Superior Court of the State of California, County of Orange - class action before Honorable Kim G. Dunning, 8 Dep't CX 104; filed conditionally under seal per CRC 2.551 class action litigation related to HIPAA privacy and security breach involving $8 billion health system, disclosures under HIPAA Privacy and Security, California Confidentiality of Medical Information Act (CA Civil Code §56 et seq.) Opinions: laws, best practices and procedures for privacy and security, duty to keep records protected, ICD-9, DRG, CPT coding, and pricing, and economic impact. Third party FOIA discovery with CMS, OIG, OCR, related contractors, ARRA HITECH Act and Meaningful Use attestations and payments. Review of 31,000 patient records for CMIA medical data stored in Meditech, including diagnosis codes, problem lists, lab data, BMI and other HIPAA PHI.  Statutes and best practices including:*

  - *HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308 (subsections),*
  - *45 CFR §164.410 (subsections), notification by a business associate*
  - *45 CFR §164.502 (subsections), Uses and disclosures of protected health*

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

*information*
- *45 CFR 164.512 - Uses and disclosures for which an authorization or opportunity to agree or object is not required, especially § 164.512(j)(1) Uses and disclosures to avert a serious threat to health or safety and § 164.512(j)(2-4) Use or disclosure not permitted.*
- *45 CFR §170.314 (subsections); electronic health record certification criteria (Meaningful Use)*
- *31 U.S.C. § 3729.  (a) False Claims Act;*
- *California Confidentiality of Medical Information Act (CA Civil Code §56 et seq.)*
- *ARRA HITECH Act reporting procedures and documentation, attestations and stimulus funds eligibility based on evaluation of over 33 measures, information safeguards, operating procedures.  Expert Report 2015.*

- *Cost expenditures based on HITECH Act Final Rule, HIPAA Final Rule in support of counsel's damages theories.*


- (D) Confidential Plaintiff v. Pasadena School District

 *BC 457 096 Superior Court of the State of California for the County of Los Angeles.*

 *HIPAA privacy and security, disclosures under **HIPAA Privacy and Security**.*

 Opinions: laws, best practices and procedures for privacy and security, duty to keep records protected, whether there is a duty to disclose records. Relevant statutes and best practices include: 45 CFR 164.512 - Uses and disclosures for which an authorization or opportunity to agree or object is not required, especially § 164.512(j)(1) Uses and disclosures to avert a serious threat to health or safety and § 164.512(j) (2-4) Use or disclosure not permitted (Tarrasoff standard).  Deposition, 2015.

11

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided
Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (P) R.D., vs. Providence Health Services et al,

14-2-33747-7 SEA in The Superior Court of the State of Washington in and for the County of King – HIPAA privacy and security breach involving alleged unauthorized breach of HIV diagnosis at multi-billion-dollar health system, disclosures under HIPAA Privacy and Security.  Examine EPIC EMR and Onbase electronic health record Meaningful Use compliance according to industry best practices and guidelines. Opinions: laws, best practices and procedures for privacy and security, duty to keep records protected, related contractors, ARRA HITECH Act and Meaningful Use attestations and security best practices. Potential citations of statutes and cases including:

- HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308 (subsections)),
- 45 CFR §164.410 (subsections), notification by a business associate
- 45 CFR §164.502 (subsections), Uses and disclosures of protected health information
- 45 CFR §170.314 (subsections); electronic health record certification criteria (Meaningful Use)
- 31 U.S.C. § 3729.  (a) False Claims Act;
- ARRA HITECH Act reporting procedures and documentation, attestations and stimulus funds eligibility based on evaluation of over 33 measures, information safeguards, operating procedures.
- Joint Commission standards for healthcare staffing firms, Medicare and Medicaid eligibility Conditions of Participation (CoPs) or Conditions for Coverage (CfCs)
- Wash. Admin. Code § 246-455-080 Security and Release of Reported Hospital Patient Discharge Data

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

(2) … security and system safeguards to prevent and detect unauthorized access, modification, or manipulation of individually identifiable health information. Accordingly, the safeguards will include:

(a) Documented formal procedures for handling the information;

(b) Physical safeguards to protect computer systems and other pertinent equipment from intrusion;

(c) Processes to protect, control and audit access to the information;

(d) Processes to protect the information from unauthorized access or disclosure when it is transmitted over communication networks;

(e) Processes to protect the information when it is physically moved from one location to another;

(f) Processes to ensure the information is encrypted when:

(i) It resides in an area that is readily accessible by individuals who are not authorized to access the information (e.g., shared network drives or outside the agency data centers);

(ii) It is stored in a format that is easily accessible by individuals who are not authorized to access the information (e.g., text files and spreadsheets);

o Wash. Rev. Code § 70.02.170 Civil remedies – Declaration 2016.

- (D) Confidential Plaintiff (Jane Doe) v. Brigham and Women's Hospital.
*C.A. No. 2014-0007-B Suffolk Superior Court, Massachusetts. Evaluate whether best practices in HIPAA Privacy and Security were used to prevent HIPAA privacy breach. Opinions: laws, best practices and procedures for privacy and security, duty to keep records protected. Third party FOIA discovery with CMS, OIG, OCR, related contractors, ARRA HITECH Act and **Meaningful Use attestations patient portal security best practices**. Potential citations of statutes and cases including:*

  - *Massachusetts State Statute: Standards for the Protection of Personal*

13

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

*Information of Residents of the Commonwealth, as set forth in M.G.L. c. 93H and 201 C.M.R. 17.00, et seq HIPAA Privacy and Security (45 CFR §162.1002 45 CFR §164.308 (subsections)),*

- *45 CFR §164.502 (subsections), Uses and disclosures of protected health information*
- *45 CFR §170.314 (subsections); electronic health record certification criteria (Meaningful Use)*
- *Declaration 2016*

- (P) Jane Doe vs United Medical Center and Innovative Staffing Solutions.  Case No. 2015 CA 003716 B in Superior Court for the District of Columbia. Opinions regarding industry best practices and guidelines for health care providers and the Certification Review Process / Health Care Staffing Services Certification Personnel File Review.  Joint Commission standards for healthcare staffing firms, Medicare and Medicaid eligibility Conditions of Participation (CoPs) or Conditions for Coverage (CfCs). Declaration 2016.

  1. Current licensure, certification, or registration required by the state, the firm, or customer from primary sources
  2. Education and training associated with residency or advanced practice, experience, and competency appropriate for assigned responsibilities
  3. Clinical work history/references
  4. Initial and ongoing evaluation of competency
  5. Information on criminal background according to law, regulation, and customer requirements
  6. Compliance with applicable health screening and immunization requirements established by the firm or customer
  7. Information on sanctions or limitations against an individual's license is reviewed upon hire, and upon reactivation or expiration. For
  8. individuals who are practicing as Licensed Independent Practitioners, in

addition to the aforementioned requirements, the firm performs the following according to law, regulation, and firm policy: Voluntary and involuntary relinquishment of any license or registration is verified and documented

9. Voluntary and involuntary termination of hospital medical staff membership is verified and documented

10. Any evidence of an unusual pattern or an excessive number of professional liability actions resulting in a final judgment against the applicant is investigated and documented

11. Documentation that the clinical staff person has received orientation from the organization

- (P) Jessica Umstead, Plaintiff v. Mercy Hospital, Cedar Rapids Iowa

In the Iowa District Court in and for Linn County. No. LACV 086191.  Declaration 2017. Opinions – whether Mercy Hospital, Cedar Rapids ("Mercy") is a HIPAA Covered Entity ("CE") and is subject to Federal and state regulations, including the HIPAA Privacy and Security Rules and the ARRA HITECH Act and Administrative Safeguards, Physical Safeguards, Technical Safeguards, Documented Organizational Policies, Procedures, whether  Workforce member of a CE, has duties under the both HIPAA and the HITECH Act Safeguards, CE policies and training protocols, corrective actions, information access controls, and supervision of its workforce.  Patients reasonable expectation that their sensitive Protected Health Information ("PHI") will be kept private, damages that are commonly awarded to patients whose PHI accessed or are released without authorization, Mercy's policies and procedures are in direct conflict with statutes, industry best practices and guidelines to protect PHI.  Whether Mercy was met standards mandated by Behavioral Health Unit. 42 CFR Part 2 and  Iowa Code 228 which provides specific protection from disclosure of mental health information and requires that upon disclosure, the patient is notified that an unauthorized disclosure of mental health information is unlawful, and that civil damages and criminal penalties may be applicable to the unauthorized disclosure of mental health information, corrective action including

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Workforce member sanctions. *See* § 164.308(a)(1)(ii)(A) ) and SANCTION POLICY §
164.308(a)(1)(ii)(C). Violation of the Minimum Necessary Standard. (*See* 42 CFR
164.502(b)); Failure to detect, prevent and correct security violations. §164.308(a)(1),
2013 HIPAA Omnibus Final Rule, Access Control Standard provided for in §
164.312(a)(1) by failing to ensure access controls only provided the minimum necessary
access. Whether Electronic Health Record system was not configured to perform an
Automatic Logoff per §164.312(a)(2)(iii)) duty to mitigate harm but failed to do so. (*See*
45 C.F.R. § 164.402 (Subpart D) and whether there was a violation of Iowa Code Section
22.7 regarding confidentiality of medical records and Iowa Code 228 regarding
protection from disclosure of mental health information.

- (P) Jacqueline Krouse v. Avera Health and Chris Krouse

Case 15-3083 State of South Dakota, County of Minnehaha, Second Judicial Circuit.
Declaration 28th of February 2017, Deposition May 2017.  Opinions – whether Avera
Hospital, Cedar Rapids ("Avera") is a HIPAA Covered Entity ("CE") and is subject to
Federal and state regulations, including the HIPAA Privacy and Security Rules and the
ARRA HITECH Act and Administrative Safeguards, Physical Safeguards, Technical
Safeguards, Documented Organizational Policies, Procedures, whether  Workforce
member of a CE, has duties under the both HIPAA and the HITECH Act Safeguards, CE
policies and training protocols, corrective actions, information access controls, and
supervision of its workforce. Patients reasonable expectation that their sensitive Protected
Health Information ("PHI") will be kept private, damages that are commonly awarded to
patients whose PHI accessed or are released without authorization, Avera's policies and
procedures are in direct conflict with statutes, industry best practices and guidelines to
protect PHI.  Whether Avera was met standards mandated by Behavioral Health Unit. 42
CFR Part 2 Workforce member sanctions. *See* § 164.308(a)(1)(ii)(A) ) and SANCTION
POLICY § 164.308(a)(1)(ii)(C). Violation of the Minimum Necessary Standard. (*See* 42
CFR 164.502(b)); Failure to detect, prevent and correct security violations. §
164.308(a)(1), 2013 HIPAA Omnibus Final Rule, Access Control Standard provided for
in § 164.312(a)(1) by failing to ensure access controls only provided the minimum

16

necessary access. Whether Electronic Health Record system was not configured to perform an Automatic Logoff per §164.312(a)(2)(iii)) duty to mitigate harm but failed to do so. (*See* 45 C.F.R. § 164.402 (Subpart D).

- (P) FT v. Children's Mercy Hospital

Case No.: 1616-CV01466. Deposition April 2017.  Opinions and basis:

Principles Statutes Industry Best Practices and Guidelines

1. The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

   a. A breach is, generally, an impermissible use or disclosure under the Privacy Rule that compromises the security or privacy of the protected health information.  An impermissible use or disclosure of protected health information is presumed to be a breach unless the covered entity or business associate, as applicable, demonstrates that there is a low probability that the protected health information has been compromised based on a risk assessment of at least the following factors:

      i. The nature and extent of the protected health information involved, including the types of identifiers and the likelihood of re-identification;

      ii. The unauthorized person who used the protected health information or to whom the disclosure was made;

      iii. Whether the protected health information was actually acquired or viewed; and

      iv. The extent to which the risk to the protected health information has been mitigated.

2. Provider's compliance to HIPAA Privacy and Security Rules and the HITECH Act related to the breach, including

      a. Providers' Security Incident Procedures provided for in § 164.308(a)(6) [i][ii]

Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided
Updated October 9, 2017

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

    b.  Provider's methods for conducting a Breach Evaluation regarding access of Plaintiff medical records [iii]

    c.  Provider's Response and Reporting **results** of the Breach Evaluation[iv] regarding access of Plaintiff's medical records provided for in § 164.308(a)(6)(ii)[v]

    d.  Provider's identification of any for  failures to follow industry best practices and guidelines to obtain reasonable assurances [vi] and a Business Associate Agreement from any subcontractors jointly responsible for maintaining any breached system(s).[vii viii ix]

3.  Prior reports and complaints against Provider regarding improper access to patients' medical records;

4.  American Recovery and Reinvestment Act (ARRA) Health Information Technology for Economic and Clinical Health Act (HITECH) related issues, including compliance with associated federal rules and regulations;

    a.  Provider's Risk Analysis, Risk Management,[x] Sanction Policy and Information System Review, and annual updates to the Risk Analysis [xi xii xiii] in general for the year prior, the year of, and the year after the breach.

    b.  Provider's Information Systems Activity Review (§ 164.308(a)(1)(ii)(D)[xiv]

    c.  Provider's findings from Risk Analysis, specifically:[xv]

        i.  What security measures were used to protect ePHI during transmission?

        ii.  Did the risk analysis identify scenarios that may result in modification to ePHI by unauthorized sources during transmission?

    d.  Provider's audit controls under § 164.312(b) that monitor access of electronic protected health information (ePHI) [xvi] including implementation of hardware, software, and/or procedural mechanisms

that record and examine activity in information systems that contain or use electronic protected health information[xvii] specifically:

    i. What audit control mechanisms were reasonable and appropriate to implement so as to record and examine activity in information systems that contain or use ePHI?

    ii. What are the audit control capabilities of information systems with ePHI?

    iii. Did the audit controls implemented allow the organization to adhere to policy and procedures developed to comply with the required implementation specification at § 164.308(a)(1)(ii)(D) for Information System Activity Review?

e. Access Control Standard § 164.312(a)(1) – enabling authorized users to access the minimum necessary information needed to perform job functions. [xviii]

f. Information Access Management provided for in § 164.308(a)(4)[xix]

g. Person or Entity Authentication provided for in § 164.312(d) [xx]

h. Provider's compliance with Security Awareness and Training including Security Reminders, Log-in Monitoring provided for in § 164.308(a)(5). [xxi]

i. Workforce Security as provided for in § 164.308(a)(3) [xxii]

j. Authorization and Supervision as provided for in § 164.308(a)(3)(ii)(A) [xxiii] Specifically:

    i. Are detailed job descriptions used to determine what level of access the person holding the position should have to ePHI?

    ii. Who has or should have the authority to determine who can access ePHI, e.g., supervisors or managers?

    iii. Are there similar existing processes used for paper records that could be used as an example for the ePHI?

   k. Workforce Clearance Procedure as provided for in § 164.308(a)(3)(ii)(B)[xxiv]

      i. Are there existing procedures for determining that the appropriate workforce members have access to the necessary information?

      ii. Are the procedures used consistently within the organization when determining access of related workforce job functions?

   l. Termination Procedures as provided for in § 164.308(a)(3)(ii)(C) [xxv]

      i. Do the termination policies and procedures assign responsibility for removing information system and/or physical access?

      ii. Do the policies and procedures include timely communication of termination actions to insure that the termination procedures are appropriately followed?

5. Documentation of Provider's policies and procedures demonstrating compliance during the calendar year of the breach with Joint Commission Health Care Staffing Services Certification (HCSS) [xxvi] including:

   a. that the staff person has received orientation from the organization.

   b. initial and ongoing evaluation of competency

6. Information technology related issues, including how the electronic health record system or supporting systems at rest (i.e. hospitals Longitudinal Medical Record System ('LMR') or Clinical Data Repository ('CDR') and integrated patient portal and/or Provider's medical records storage system(s) work, including security and monitoring features, access limitations, and notification procedures regarding improper access;

7. Provider's knowledge regarding access of Plaintiff's medical records, including what records were accessed, the length of time or number of times they were accessed, what information was viewed, and the investigation Provider performed; [Massey

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

deposition stated no actions taken, no follow up with the Police, no mitigation, no anti-identity theft offering to Plaintiff]

8.  Provider's knowledge regarding training that is required or conducted for temporary or permanent medical records IT staff, reviewers such as coders and auditors, and clinical staff.

- *(D) Paulette Diaz, et al, vs. MDC Restaurants, LLC et al;*

Case A 701633.  Deposition 2016.  Department XV class action complaint in the Eighth Judicial District Court in and for Clark County, State of Nevada. Served as rebuttal expert in a case concerning what constitutes "health insurance," qualified health insurance plans, and those expenses covered generally under insurance and specifically under ACA plans, Medicaid and Medicaid waivers and under what conditions they would be covered. Apply national perspective to health insurance coverage under The Nevada Administrative Code§ 608. and §608.104, Nevada Labor Commissioner's regulations and opinions regarding the convolution of the Act, and a review of specific benefits offered by an employer of minimum wage workers in comparison to national industry best practices and guidelines in respect to the Patient Protection :md Affordable Care Act ("ACA"), including Medicaid Expansion in Nevada, Minimum Essential Coverage ("MEC"), out-of-pocket limits, and Federal Poverty Level (FPL) guidelines. Areas of testimony also included the tenets of cost-sharing subsidies and minimum essential coverage (MEC), benchmark plans, generally, as well as within federal laws such as the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Employee Retirement Income Security Act of 1974 (ERISA) and related issues, including Taft-Hartley trusts and Centers for Medicare and Medicaid (CMS).

- (D) Natalie Torres v Pocatello Children and Adolescent Clinic, et al.,

Case CV-2013-1553. Declaration 2015.  District Court of Sixth Judicial District of the State of Idaho, Bannock County.  Expert opinion re: future medical expenses and those expenses covered generally under insurance and specifically under ACA plans, Medicaid

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

and Medicaid waivers and under what conditions they would be covered.  Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the Idaho Exchange, as well as Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP), as described in Idaho Law (IDAPA 16.03.17).  Determine applicability of Prohibition of Preexisting Condition Exclusions (45 CFR § 147.108), Medicare Expansion and Health Insurance Exchanges.

- (D) *Bradley Welding v Franscali and Orthopedic Associates of Northern Illinois*

 In the State of Illinois in the Circuit Court of the 17th Judicial Circuit Winnebago County, Illinois Case 12 L 323. Expert report 2016.  Expert opinion re: accuracy of data for future medical expenses including pain management modalities (Ketamine Infusions, Continuous Epidural Spinal Infusion, Continuous Spinal Cord Stimulator, Dorsal Root Ganglia Stimulator) and supporting medical durable medical equipment (DME) pain management device (s).  Review deposition testimony of opposing counsel's healthcare economist, medical experts and consider Affordable Care Act and the policies of insurance available under the ACA through the Illinois Exchange, Medicaid expansion, Federal Poverty Level (FPL) calculations, as well as dual eligible Medicare and Medicaid post age 65, Medicaid under a §1915(c) of the Social Security Act, Home and Community-Based Services Waiver Medicare-Medicaid Coordinated Plan (MMCP) for disabled insureds as described in Illinois Law.  Opinion regarding subrogation under the Affordable Care Act. Evaluate "metal plan" (bronze, silver, etc.) coverage by actuarial value, and cost sharing subsidies to estimate maximum out of pocket for lifetime of patient. Condition Exclusions (45 CFR § 147.108).

- (P) *Giraldo v. Canta and Groceryworks.com et al*

Case CGC-15-544893 Superior Court of California, County of San Francisco.  Expert report, 2016, trial appearance August 2016. Rebuttal expert regarding whether emergency

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

medical fees including Trauma Activation, ambulance transportation (including mileage, supplies, other fees) are reasonable customary and necessary according to industry best practices and guidelines. Specifically, evaluate the documentation by an emergency response team and whether it supports U.S. Centers for Disease Control (CDC) Guidelines for Field Triage of Injured Patients: Recommendations of the National Expert Panel on Field Triage, 2011; Federal Interagency Committee on Emergency Medical Services (FICEMS), established by Public Law 109-59, and section 10202 (*18*) California Health and Safety Code § 1371.4 a provision of the Knox-Keene Act.  Provide geographic market analysis of usual customary and reasonable (UCR) fees for orthopedic, pain management, medical device (s) and supplies, medication, behavioral health, rehabilitation medical expenses; ICD-9 diagnosis, CPT outpatient procedures, HCPCS medical supplies, ambulance fee medical coding.

- (P) UCLA Medical Center v. Blue Cross Blue Shield

Arbitration with AAA case no. 722013001112.  Expert report, 2015. Pre-arbitration expert consultant for mediation with JAMS reference number 1200051271. Provide expert opinion on role of Medicare Administrative Contractors (MACs) in providing reimbursement rates and the historical pricing guidance and usage of nuclear medicine codes. Provide expert opinion on reimbursement for Technical Component (TC) and Professional Component (PC) as well as Relative Value Units (RVUs) of diagnostic imaging services primarily used for Oncology (Nuclear Medicine, PET-Scan) based on specific services by CPT code.

- (P) *Rhodes v Renown*

CV14-02054 in the Second Judicial District Court of the State of Nevada in and for the County of Washoe. Expert report 2015. Patient financial services, Medical coding, usual customary and reasonable (UCR) cost of care and documentation of necessity for outpatient obstetrics surgical procedure and CPT codes, medical device (s) and supplies. Applicable State Statutes include: Uninsured patient discount (NRS 439B.260); Federal

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

statutes and best practices: Fair and Accurate Credit Transactions Act ("FACTA**")** Fair
Credit Reporting Act **(**FCRA). FACTA §312(a), (FACTA§312(c), FCRA §623(e)(1)),
FCRA §623(a)(8)); Ability of patients as consumers to dispute information with
companies that report to credit bureaus; Affordable Care Act ( not for profit hospitals
required to offer community benefit in exchange for its tax-exempt status[2] (see Rev. Rul.
69-545, 1969-2 C.B. 117.))

- (P) *John D. Thomson v. HMC Group, Torrance Medical Center*

Et al. CV13 - 03273 D M G United States District Court, Central District of California.
Expert report and deposition 2015.  Expert opinion regarding hospital facility revenues
for use in cost benefit analysis, damages calculations for surgical suites based on industry
best practices and statutes associated with damages related to intellectual property rights
litigation.  Evaluation of revenues attributable to surgical suites based on Inpatient
Prospective Payment System (IPPS) and Outpatient Prospective Payment System (OPPS)
using defendant provided materials as well as government sources from HHS / CMS.
Demonstrated expertise in statutory mandates such as Diagnosis Related Groupings
(DRGs), ICD-9, ICD-10 and CPT codes.  Applicable statutes include: Section 1886(d) of
the Social Security Act and Title Tax Equity and Fiscal Responsibility Act of 1982
(TEFRA) P.L. 98–21, Approved April 20, 1983, 42: Public Health Part 412, Criteria for
determining reasonable charges 45 CFR §405.502, 42 CFR 412.2(c)(5) ).  § 412.2 "Basis
of payment" and 42 CFR 412.60 - DRG classification and weighting factors provides the
method to calculate DRGs.

---

[2]"Examples illustrate whether a nonprofit hospital claiming exemption under section 501(c)(3) of
the Code is operated to serve a public rather than a private interest; Revenue Ruling 56-185
modified." – IRS.gov/pub/irs-tege/rr69-545.pdf  (see Rev. Rul. 69-545, 1969-2 C.B. 117.)[2]

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- (D) *Joann Hilton v. USA Logistics Carriers, LLC and Jose Juan Soto-Estrada*

Case No. C879214-J, in the 430th District Court of Hidalgo County, Texas.   Expert report and deposition 2014. Usual customary and reasonable fees, coding and billing and resulting charges including CPT, MRI, CPT, ED, ambulance, emergency room (including explanation to court of Level 1, Level 2, Level 3, Level 4, Level 5 ED visits), trauma activation fees, cost of ER and OR per minute, spinal fusion procedure (orthopedic surgical), medical device (s) including surgical screws, surgical screws, supplies, chiropractic, pharmacy (NDC codes for medication), pain management, physical therapy, and other procedures; duty to mitigate costs, ambulance and non-emergency transportation costs, three-day payment rule 42 CFR 412.2(c)(5); evaluate potential merits for U.S.C. § 3729. ICD-9, CPT, DRG, HCPCS and hospital revenue coding, duty to mitigate damages under Texas statutes, Section 1886(d) of the Social Security Act and Title 42: Public Health Part 412—Prospective Payment Systems for Inpatient Hospital Services; subrogation issues.

- (D) *Raul Martinez v. Lee Ill Young*

BC489656, Superior Court of the State of California for the County of Los Angeles, Central District. Expert report 2015.  Determination of Usual Customary and Reasonable (UCR) cost of care medical bills including spinal fusion surgery for orthopedics, and diagnostic imaging medical specialties. Evaluate codes and episodic groupings (DRGs), ICD-9, CPT for inpatient days, ambulatory procedures, rehabilitation, surgical procedures, supplies and device costs, Section 1886(d) of the Social Security Act and Title 42: Public Health Part 412—Prospective Payment Systems for Inpatient Hospital Services.  Patient's duty to mitigate medical costs.

- (D) Jorge Uribe v. City of Maywood and Andrew Serrata

J.S.I.D. File 10-0416 L.A.S.D. URN 010-00058?3199-055 Los Angeles County District Office Bureau of Fraud and Corruption Prosecutions Justice System Integrity Division. Determination of Usual Customary and Reasonable (UCR) cost of care for approximately $500,000 in medical bills including surgery for internal injuries caused by gunshot

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

wounds – trauma activation fees, ambulance transportation, cardiology, orthopedics, pathology / lab tests and interpretations, and diagnostic imaging medical specialties including CT and MRI, room charges, operating room minutes, medications, anesthesia, evaluation and management (E&M). Evaluate codes and episodic groupings (DRGs) for inpatient days, ambulatory procedures, rehabilitation, surgical procedures, supplies and device costs, duty to mitigate damages.  Relevant statutes, industry standards and best practice: Section 1886(d) of the Social Security Act and Title 42: Public Health Part 412—Inpatient Prospective Payment System (IPPS) for Hospital Services and customary rehabilitation charges and reimbursement.

- *(D) Billrite v Vinay M. Reddy, MD, Spine & Nerve Diagnostic Center.*

34-2014-00166608 SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF SACRAMENTO.  Expert report August 2016. Deposition February 2017.  Provide opinion regarding industry best practices and guidelines for outsourced medical billing for pain management, electromyogram ("EMG") which are used for among other medical applications, advanced pain management, diagnostics such as Nerve Conduction Studies (NCS), Epidural Steroid Injection (ESI) and Urine Toxicology Studies for a health care provider and whether medical coding and billing was being performed in compliance with industry best practices and guidelines.  Evaluate whether proper coding in compliance with California Workers' Compensation Reform Senate Bill 863 (SB 863) and the National Correct Coding Initiative (NCCI) which provides for guidelines on proper bundling of services (and, flags incorrectly unbundled services which may be due to fraud or up coding).  Evaluate claims under California Workers' Compensation and California SB 863 which standardized Workers' Compensation based on Medicare billing rules; Medical Treatment Utilization Schedule (MTUS) which focus on reducing costs and utilization for procedures including chronic pain treatment, neck / upper back procedures, elbow disorders, forearm, wrist, hand, low back, knee procedures, cost of surgical screws and medical device (s).

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- *(D) Rose v. Herfy's and Lee*

NO. 15-2-14145-7 SEA Superior Court of the State of Washington for King County. Expert report and deposition September 2016. Evaluate over $1.5 million in medical bills including orthopedic procedures, medical device (s) and supplies rehabilitation and skilled nursing billings. Perform regional analysis for Seattle metropolitan area on usual customary and reasonable charges from other providers; prepare declaration and expert report December 2016, Deposition January 2016. Opinions, basis: OPPS and CPT, APC codes, IPPS, DRG inpatient procedures, skilled nursing billing, rehabilitation, orthopedic supply, national and regional pricing; customary charge rates when there is a collateral source rule.  Opine on the usual customary and reasonable cost of care in the Seattle market regarding over $1.2 million in medical bills.  Billings spanned several years and geographic locations.  Billings were for several medical specialties including inpatient, outpatient, skilled nursing and rehabilitation. Over 4,400 pages of documentation on medical supplies, rehabilitation after hospital discharges, etc. including:

1. Ambulance transportation
2. Ambulatory Surgery Center (ASC) payment models including APCs
3. Anesthesiology including anesthesia monitoring time
4. Blood gas procedures
5. Cardiology
6. CT Scans
7. Emergency medicine
8. Evaluation and Management (E&M) physician encounters
9. Home care / home care self-care education
10. Injections
11. Inpatient payment rules
12. Medications including AWP and PBM fees (Tizanidine / muscle relaxant, enoxaparin, pravastatin, insulin,
13. Operating room time and charges
14. Orthopedic surgery and physician bills
15. Outpatient payment rules and physician fee schedules
16. Pain management and pain specific medications and procedures (Ketamine, Morphine, Oxycodone, spinal stimulators)
17. Pathology including blood and other laboratory tests

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated October 9, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

18. Physical Therapy

19. Recovery / rehab room time and charges

20. Surgical room time and charges

21. Surgical screws related to orthopedic surgery

22. Trauma activation fees

23. Vascular procedures

24. Wheelchairs and other medical supplies

25. X-Rays

- *(D) Derkack v. Boyd*

NO. 15-2-18391-5 KNT SUPERIOR COURT OF THE STATE OF WASHINGTON FOR KING COUNTY.  Expert declaration September 29th, 2016. Evaluate over $1.5 million in medical bills including orthopedic procedures, medical device (s) and supplies rehabilitation and skilled nursing billings. Perform regional analysis for Seattle metropolitan area on usual customary and reasonable charges from other providers; prepare declaration and expert report December 2016, Deposition January 2016. Opinions, basis: OPPS and CPT, APC codes, IPPS, DRG inpatient procedures, skilled nursing billing, rehabilitation, orthopedic supply, national and regional pricing; customary charge rates when there is a collateral source rule.  Opine on the usual customary and reasonable cost of care in the Seattle market regarding over $1.2 million in medical bills.  Billings spanned several years and geographic locations.  Billings were for several medical specialties including inpatient, outpatient, skilled nursing and rehabilitation. Over 4,400 pages of documentation on medical supplies, rehabilitation after hospital discharges, etc. including:

1. Ambulance transportation

2. Ambulatory Surgery Center (ASC) payment models including APCs

3. Anesthesiology including anesthesia monitoring time

4. Blood gas procedures

5. Cardiology

6. CT Scans

7. Emergency medicine evaluation and management (E&M) physician encounters including

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated August 22, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

Level I (CPT 99281) Level II (CPT 99282), Level III (CPT 99283) Level IV (CPT 99284) Level V (CPT 99285) and correlating Ambulatory Procedure Codes (APCs) based on possible interventions and potential symptoms / patient conditions.

8.  Evaluation and Management (E&M) physician encounters post admission, post discharge

9.  Home care / home care self-care education

10. Injections

11. Inpatient payment rules

12. Medications including AWP and PBM fees (Tizanidine / muscle relaxant, enoxaparin, pravastatin, insulin,

13. Operating room time and charges

14. Orthopedic surgery and physician bills

15. Outpatient payment rules and physician fee schedules

16. Pain management and pain specific medications and procedures (Ketamine, Morphine, Oxycodone, spinal stimulators)

17. Pathology including blood and other laboratory tests

18. Physical Therapy

19. Recovery / rehab room time and charges

20. Surgical room time and charges

21. Surgical screws related to orthopedic surgery

22. Trauma activation fees

23. Vascular procedures

24. Wheelchairs and other medical supplies

25. X-Rays

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated August 22, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- *(D) Tamie Lobin v. J.B. Hunt Transport, Inc. and Roosevelt Allen.*

AAA Arbitration No: 01-16-0000-0480.  Expert report March 13, 2017. Deposition March 13, 2017. Arbitration August 2017. Review the medical billing, medical and other relevant documents and provide an opinion based on the usual customary and reasonable charges for the bills provided to me for Plaintiff's past care in 2014 – 2017 in Dallas, Texas; opinion of the maximum out of pocket cost (meaning the costs borne by the Plaintiff rather than insurance) of care for the Plaintiff if receiving medical benefits as a disabled person from Texas Medicaid, Medicaid Waivers and programs for those with disabilities, and an opinion of the maximum out of pocket cost of care for the Plaintiff if receiving medical benefits from an Affordable Care Act (ACA) qualified health plan, or a conforming Taft-Hartley labor management trust fund "grandfathered" health plan under the ACA. Based on the life care plan from Plaintiff, provide an opinion based on the criteria above regarding future costs of care, including Medicare coverage on and after age 65, and conduct a market study in Dallas, Texas to confirm with reasonable certainty whether Plaintiff has access to covered benefits for her medical costs, and whether contracted health care providers are easily accessible within a 25-mile radius of his home who offer care for his insured benefits.  Basis included Inpatient Prospective Payment Rule (IPPS), Outpatient Prospective Payment Rule, DRG, CPT code values, Medicare Geographic Adjustment Factors (GAF), Medicaid reimbursement and claims, clinical documentation in support of claims.

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated August 22, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

- *(P) Medical Acquisition Company, Inc. v. Southwest Law Center et al*

Case number BC585918 Superior Court of the State of California, County of Los Angeles.  Deposition July 2015. Review the medical billing, medical and other relevant documents and provide an opinion based on the usual customary and reasonable charges for the bills provided to me for Plaintiff's past care in in the Los Angeles, Orange County, and San Francisco Core Based Statistical Areas (CBSA) markets; (meaning the costs that should be borne by the Plaintiff rather than insurance).  Counsel provided specific instructions: "…in the *Katiuzhinsky*, case, the court dealt with the uninsured plaintiff treated on liens. There the appellate court refused to speculate about factoring or future lien write downs and found that the plaintiff was not prevented from recovering the full amount of bills as long as they were legitimately incurred and plaintiff remained responsible for the full amount." Counsel also explained that, "… in the *Bermudez*, case, the court again dealt with the plaintiff with no medical insurance. There it found the billed amounts relevant and admissible in the uninsured context, subject to plaintiff's burden of proof that they are reasonable and customary." Applied a methodology that reviews charges, which is defined as "The dollar amounts a provider sets, or 'bills' for services rendered ..." Basis included, Outpatient Prospective Payment Rule, DRG, CPT code values, Medicare Geographic Adjustment Factors (GAF), whether medical procedures were unbundled using the National Correct Coding Initiative (NCCI) which uses software algorithms to compare combinations of medical procedure CPT billing codes, place of service, date of service to identify disallowable unbundling, Medically Necessary procedures (basis NCCI) which can be employed using software algorithms to compare combinations of medical procedure CPT billing codes and diagnosis codes to identify those medical procedures that may be un-necessary.

---

[i] The Security Final Rule defines "security incident" in §164.304 as "the attempted or

successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system.

[ii] (a) A covered entity must, in accordance with § 164.306:

 (6)(i) Standard: Security incident procedures. Implement policies and procedures to address security incidents.

 (ii) Implementation specification:  Response and Reporting (Required).

Identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity; and document security incidents and their outcomes.

[iii] The HIPAA Final Rule also known as "HIPAA Omnibus Rule" provides Covered Entities make a determination of whether PHI was "compromised" based on a four factor breach evaluation (*See* 45 CFR Parts 160 and 164 modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules Under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act; Other Modifications to the HIPAA Rules; Business Associate and Business Associate Agreement published January 25, 2013 and effective March 26, 2013).

[iv] The HIPAA Security Rule requires covered entities to implement policies and procedures to address security incidents.  This includes (i) identifying and responding to suspected or known security incidents, (ii) mitigating, to the extent practicable, harmful effects of security incidents that are known to the covered entity, and (iii) documenting security incidents and their outcomes.  (See 45 CFR 164.308(a)(6).)

[v] "Identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity; and document security incidents and their outcomes."

[vi] § 164.308(b)(4) provides, "Document the satisfactory assurances required by paragraph

(b)(1) [the Business Associate Contracts and Other Arrangements] of this section through a written contract or other arrangement with the business associate that meets the applicable requirements of §164.314(a) [the Organizational Requirements].

[vii] Since the April 14, 2003 HIPAA Privacy Rule deadline, **Covered Entities** have been **required** to obtain satisfactory assurances (164.314(a)) that the business associate will appropriately safeguard health information. A covered entity that violates satisfactory assurances will be in non-compliance with the standards and requirements (164.314(a)).

[viii] The HIPAA Omnibus Rule makes a Business Associate's subcontractor a "Business Associate." Prior to the Rule, a business associate was responsible for getting "reasonable assurances" from its subcontractors that the subcontractors would comply with the provisions of the applicable business associate agreement. After the Rule, a Business Associate must enter into a Business Associate Agreement with each of its subcontractors. Because the subcontractor is a "Business Associate," the subcontractor must also comply with the Security Rule and some provisions of the Privacy Rule, including entering into a business associate agreement with each of its subcontractors.

Importantly, the Final Rule reaffirms that regardless of whether a Business Associate Agreement exists, one is deemed to be a business associate from the moment that person or entity creates, receives, maintains, or transmits PHI on behalf of a covered entity or another business associate.

45 CFR 160.103(4)(i) – Definitions provides that an entity including subcontractor for a CE is considered a HIPAA Business Associate (BA) if it "…creates, receives, maintains, or transmits [PHI] for a function or activity regulated by [HIPAA]" on behalf of a CE.

[ix] The BAA must meet certain standards.  45 CFR 164.504 (e)(1)(i) Standard: Business associate contracts provides:

(i) The [BAA] contract or other arrangement required by§ 164.502(e)(2) must meet the

requirements of paragraph (e)(2), (e)(3), or (e)(5) of this section, as applicable.

[x] § 164.308(a)(1)(ii)(B) Risk Management is a required implementation specification. It requires an organization to make decisions about how to address security risks and vulnerabilities. The Risk Management implementation specification states that covered entities must:  "Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with §164.306(a)."

[xi] The Office for Civil Rights (OCR) of the Department of Health and Human Services (HHS) issued on May 7, 2010, Security Rule Draft Guidance on Risk Analysis. This was the first in a "series of guidance documents [that] will assist organizations in identifying and implementing the most effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of electronic protected health information.  The materials will be updated annually, as appropriate."

[xii] The required risk analysis and risk management processes at §§ 164.308(a)(1)(ii)(A) & (B) are designed to provide a foundation to guide and assist the Covered Entity to make informed decisions regarding which security measures to implement

[xiii]  § 164.308(a)(1)(ii)(A)  The Risk Analysis implementation specification requires covered entities to: "Conduct an accurate and thorough assessment of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of electronic protected health information held by the covered entity." Suggested best practices include examining: "What are the human, natural, and environmental threats to information systems that contain EPHI? "

[xiv] § 164.308(a)(1)(ii)(D) The Security Management Process standard also includes the Information System Activity Review implementation specification. This required implementation specification states that covered entities must:
"Implement procedures to regularly review records of information system activity, such

as audit logs, access reports, and security incident tracking reports."

The information system activity review enables covered entities to determine if any EPHI is used or disclosed in an inappropriate manner.

[xv] § 164.312(e)(2)(i) provides, "*Implement security measures to ensure that electronically transmitted electronic protected health information is not improperly modified without detection until disposed of.*"

[xvi] § 164.312(b) provides that a covered entity must consider its risk analysis and organizational factors, such as current technical infrastructure, hardware and software security capabilities, to determine reasonable and appropriate audit controls for information systems that contain or use EPHI.

[xvii] § 164.312(b) provides "Implement hardware, software, and/or procedural mechanisms that record and examine activity in information systems that contain or use electronic protected health information."

[xviii] The Security Rule defines access in § 164.304 as "the ability or the means necessary to read, write, modify, or communicate data/information or otherwise use any system resource. (This definition applies to "access" as used in this subpart, not as used in subpart E of this part [the HIPAA Privacy Rule])." Access controls provide users with rights and/or privileges to access and perform functions using information systems, applications, programs, or files. Access controls should enable authorized users to access the minimum necessary information needed to perform job functions. Rights and/or privileges should be granted to authorized users based on a set of access rules that the covered entity is required to implement as part of § 164.308(a)(4), the Information Access Management standard under the Administrative Safeguards section of the Rule.

[xix] "Implement policies and procedures for authorizing access to electronic protected health information that are consistent with the applicable requirements of subpart E of this part [the Privacy Rule]."  Restricting access to only those persons and entities with a

need for access is a basic tenet of security. By implementing this standard, the risk of inappropriate disclosure, alteration, or destruction of EPHI is minimized. Covered entities must determine those persons and/or entities that need access to EPHI within their environment.

xx "Implement procedures to verify that a person or entity seeking access to electronic protected health information is the one claimed."

xxi § 164.308(a)(5) provides that these are industry best practices.

xxii Covered Entities must: "Implement policies and procedures to ensure that all members of its workforce have appropriate access to electronic protected health information, as provided under [the Information Access Management standard], and to prevent those workforce members who do not have access under [the Information Access Management standard] from obtaining access to electronic protected health information."

xxiii Where the Authorization and/or Supervision implementation specification is a reasonable and appropriate safeguard for a covered entity, the covered entity must: "Implement procedures for the authorization and/or supervision of workforce members who work with electronic protected health information or in locations where it might be accessed." Authorization is the process of determining whether a particular user (or a computer system) has the right to carry out a certain activity, such as reading a file or running a program. Implementation of this addressable implementation specification will vary among covered entities, depending upon the size and complexity of the workforce, and the information systems that contain EPHI."

xxiv Covered entities need to address whether all members of the workforce with authorized access to EPHI receive appropriate clearances. Where the Workforce Clearance Procedure implementation specification is a reasonable and appropriate safeguard for a covered entity, the covered entity must:

"Implement procedures to determine that the access of a workforce member to electronic

protected health information is appropriate."

In other words, the clearance process must establish the procedures to verify that a workforce member does in fact have the appropriate access for their job function. A covered entity may choose to perform this type of screening procedure separate from or as a part of the authorization and/or supervision procedure.

xxv Where the Termination Procedures implementation specification is a reasonable and appropriate safeguard for a covered entity, the covered entity must:

"Implement procedures for terminating access to electronic protected health information when the employment of a workforce member ends or as required by determinations made as specified in paragraph (a)(3)(ii)(B) [the Workforce Clearance Procedure] of this section."

Termination procedures must be implemented to remove access privileges when an employee, contractor, or other individual previously entitled to access information no longer has these privileges. Whether the employee leaves the organization voluntarily or involuntarily, procedures to terminate access must be in place.

xxvi Joint Commission, a private group that inspects and accredits nearly 90 percent of the nation's hospitals published The Joint Commission Certification Review Process Guide : Staffing Services, 2011 – jointcommission.org  The process is voluntary but is considered an important benchmark of quality and safety for insurers and patients.  In order for a health care organization to participate in and receive payment from the Medicare or Medicaid programs, it must meet the eligibility requirements for program participation, including a certification of compliance with the Conditions of Participation (CoPs) or Conditions for Coverage (CfCs), which are set forth in federal regulations. The certification is based on a survey conducted by a state agency on behalf of the federal government, the Centers for Medicare & Medicaid Services (CMS) or a national accrediting organization, such as The Joint Commission, that has been approved by CMS as having standards and a survey process that meets or exceeds Medicare's requirements. Health care organizations that achieve accreditation through a Joint Commission deemed

**Expert Witness Michael F. Arrigo – Cases Where Testimony has been Provided**
**Updated August 22, 2017**

*Key: (P) = retained by plaintiff, (D) = retained by defense (R) = retained by Relator*

status survey are determined to meet or exceed Medicare and Medicaid requirements.

Source:

https://www.jointcommission.org/facts_about_federal_deemed_status_and_state_recognition/